**UNITED STATES of America, Plaintiff,**

**v.**

**Brenda C. LOVE, Defendant.**

**Case No. 91–1041M.**

United States District Court,
D. Colorado.

March 2, 1992.

Shaun Kaufman, Colorado Springs, Colo., for defendant.

Dave Conner, Miles Haanstad, Asst. U.S. Attys., for plaintiff.

## MEMORANDUM OPINION AND ORDER

BORCHERS, United States Magistrate Judge.

THIS MATTER is before the Court on Defendant's motion to suppress. A hearing was held on December 11, 1991, and evidence was taken at that time. Present for that hearing were the following: Kateni Leakehe, Special Assistant United States Attorney; Shaun Kaufman, attorney for Defendant; and Defendant. The matter was then taken under advisement.

An opinion was issued by this Court on December 17, 1992 dealing with some of the issues involved in this motion. The Court on its own raised the issue of whether Colorado's Express Consent Law was applicable at Fort Carson, Colorado. Counsel for the parties were then given an opportunity to submit any additional briefs on this issue.

## I.

The issues before the Court are a result of a series of happenings on July 22, 1991. On that date, Defendant was driving an automobile and was attempting to enter onto the Fort Carson military reservation. She was observed by Military Policeman David Samuelson at Gate 4 which is on B Street.

As Defendant attempted to enter Fort Carson at approximately 4:00 a.m., MP Samuelson noted that the vehicle was weaving within its lane. He directed the vehicle to stop at the gate. He then asked Defendant for identification. According to MP Samuelson, Defendant fumbled through her purse and then produced a driver's license.

MP Samuelson testified that he smelled alcohol on the breath of Defendant. He directed her to pull over to the side of the road and then to step out of her car. MP Samuelson testified that he then directed Defendant to do a series of roadside maneuvers. She did poorly on these tests. He then arrested her for driving under the influence of alcohol (DUI). She was then placed into a patrol car and taken to the MP headquarters at Fort Carson.

While at the MP headquarters, Defendant was requested to take a blood test. She refused, advising the officers that she was afraid of needles. Defendant testified that she had been advised that the breath testing machine was broken. As a result, no chemical test was taken.

Defendant filed her motion to suppress on a variety of issues. Most of those have been resolved by the previous order of December 17, 1991. Defendant has requested that her refusal to take a chemical test not be used against her at trial. She argues that the advisement given to her, as well as the failure to provide a breath test, renders the refusal inadmissible.

## II.

■ Defendant has been charged with a violation of Colo.Rev.Stat. § 42–4–1202(1)(b). This is the state DUI law which

is applicable to the Fort Carson military reservation pursuant to 18 U.S.C. § 13, the Assimilative Crimes Act. Defendant faces up to one year in jail, as well as a $1,000 fine.

The State of Colorado, as with virtually all other jurisdictions in the United States, has enacted a drunk driving testing law. This statute is commonly called the Express Consent Law. Colo.Rev.Stat. § 42–4–1202(3). This law states simply that any law enforcement officer having probable cause to believe that a alcohol driving offense has occurred may request that the driver who has been contacted take a blood or breath test. The driver is given the option first of taking a blood test. If that is refused, then a breath test will be given. That may also be refused, but the driver will then face a revocation of his or her right to drive within the State of Colorado. Colo.Rev.Stat. § 42–4–1202(3)(b)(I), (3)(d). That revocation will be for a period of ninety days on the first refusal. If a previous revocation has occurred, then a one-year revocation will be entered.

If a driver refuses to take a test, then that refusal may be used against him or her at trial. Colo.Rev.Stat. § 42–4–1202(3)(b)(I), (3)(e). There is no constitutional basis for excluding such refusal. *See South Dakota v. Neville*, 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983). It is the refusal, as well as any mention of the test being offered, that Defendant wishes to exclude from trial consideration.

After review of all of the evidence and law, the Court had serious question about the applicability of the Express Consent Law to Fort Carson or another military or governmental reservation. There is case law which indicates that the Assimilative Crimes Act does not incorporate state alcohol testing laws. *United States v. Roberts*, 845 F.2d 226 (9th Cir.1988); *United States v. Rowe*, 599 F.2d 1319 (4th Cir. 1979).

After review of file and pleadings of the parties, as well as the applicable law, this Court agrees with the United States Court of Appeals for the Ninth Circuit in finding that the Express Consent Law is not appli-cable to Fort Carson and other governmental reservations. In *Roberts*, the court held that implied consent laws were state administrative proceedings and not part of the criminal law. In that case, as with the Colorado statute, there was no criminal charge for refusing to take a test, only an administrative revocation of the driver's license.

Defendant's argument about non-compliance with the Express Law cannot simply end at this point. It should be noted that Defendant was provided a document by military police officers that was entitled "Implied Consent Policy IAW Paragraph 2–10, AR 190–5." This document refers to a repealed Colorado statute (the Implied Consent Law) and discusses procedures that are no longer relevant under Colorado law. The question is whether such notice, in and of itself, is so defective as to preclude evidence of any refusal at trial. As will be seen, this question need not be answered.

### III.

Plaintiff has cited this Court to two relatively recent additions to the United States Code. The first is a new provision to the Assimilative Crimes Act. That new provision reads, in part, as follows:

> For purposes of subsection (a) of this section, that which may or shall be imposed through judicial or administrative action under the law of a State, territory, possession, or district, for a *conviction* for operating a motor vehicle under the influence of a drug or alcohol, shall be considered to be punishment provided by that law.... (emphasis added).

18 U.S.C. § 13(b). The problem here is that a conviction is required before any action can be deemed taken by state authorities. Indeed, Defendant has had no action taken against her driving privileges in Colorado as a result of her refusal to take a blood or breath test. In Colorado, criminal and administrative actions are separate. *Brewer v. Motor Vehicle Division*, 720 P.2d 564 (Colo.1986). This section is not applicable to this case.

The second statute cited is 18 U.S.C. § 3118. That statute reads as follows:

(a) **Consent.**—Whoever operates a motor vehicle in the special maritime and territorial jurisdiction of the United States consents thereby to a chemical test or a test of such person's blood, breath, or urine, if arrested for any offense arising from such person's driving while under the influence of a drug or alcohol in such jurisdiction. The test or tests shall be administered upon the request of a police officer having reasonable grounds to believe the person arrested to have been driving a motor vehicle upon the special maritime and territorial jurisdiction of the United States while under the influence of drugs or alcohol in violation of the laws of a State, territory, possession, or district.

(b) **Effect of Refusal.**—Whoever, having consented to a test or tests by reason of subsection (a), refuses to submit to such a test or tests, after having been first advised of the consequences of such a refusal, shall be denied the privilege of operating a motor vehicle upon the special maritime or territorial jurisdiction of the United States during the period of a year commencing on the date of arrest upon which such test or tests was refused, and such refusal may be admitted into evidence in any case arising from such person's driving while operating under the influence of a drug or alcohol in such jurisdiction. Any person who operates a motor vehicle in the special maritime and territorial jurisdiction of the United States after having been denied such privilege under this subsection shall be treated for the purposes of any civil or criminal proceedings arising out of such operation as operating such vehicle without a license to do so.

The full impact of this statute may yet to be determined. No case law was found or submitted by counsel as to this section. The Court found one reported and two unpublished cases dealing with this section. *See United States v. Jerge,* 738 F.Supp. 181 (E.D.Va.1990); *see also United States v. Card,* 924 F.2d 1053 (4th Cir.1991); *United States v. Eure,* 1991 WL 275736 (4th Cir. 1991).

Several initial issues can be resolved quickly. First, there is no question that Congress can establish an implied consent law that is applicable to federal government properties and jurisdictions. Thus, § 3118 is applicable to Fort Carson and provides a mechanism for obtaining evidence in DUI cases for later use at trial. Even if a state implied consent law could be assimilated, it would be superseded by the federal law.

■ Second, the statute provides no ritualistic advisement that must be given by a law enforcement officer. A driver merely needs to be advised of the impact and ramifications of the refusal to take a test. In this case, Defendant was advised that her refusal to take a test would lead to loss of her driving privileges at Fort Carson. Though the document she received had references to a now-rescinded Colorado law, it sufficiently advised her under § 3118.

■ Third, there were reasonable grounds for MP Samuelson to request that Defendant take a chemical test. She was arrested for DUI and appeared to be drunk. She had some difficulty in operating her motor vehicle and in finding identification. There was sufficient basis for the request for the test.

■ Fourth, § 3118 does not provide for an election by a driver of the test to be taken. A test may be requested of blood, breath, or urine, but it is solely the right of the arresting officer to determine which test is to be taken. In *Jerge,* the district judge held that the law enforcement officer could require the taking of all three tests, with refusal of any one leading to the loss of driving privileges. *United States v. Jerge,* 738 F.Supp. at 184. The Fourth Circuit's opinion in *Card* appears to sanction the offering of one of three tests, but not forcing all three to be taken.

■ This Court disagrees with the reasoning of *Jerge.* Though the language of the statute could be interpreted, with the phrase of "chemical test or tests", to sanction multiple tests, the phrase "person's

blood, breath, or urine" leads this Court to the conclusion that only one test need be offered. Further, if a test is taken, such as blood, then no additional tests are sanctioned. Fort Carson can, as it has in the past, continue to offer a blood test first and then a breath test, but there is no compulsion to do so. Further, if the breath testing apparatus is not working, then there is no requirement that an option be allowed. In this case, Defendant cannot argue under § 3118 that she had an option, as she did not. Once she elected not to have blood drawn, there was no further requirement that another test be offered.

█ Fifth, Congress has the right to allow evidence of a refusal to be placed into evidence. Whatever federal constitutional issues existed were resolved in *South Dakota v. Neville*, 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983). Even if a Colorado state constitutional right existed that precluded discussion of a refusal, it would have no bearing or impact in this case. The prosecution may present evidence that Defendant refused to take a blood test.

In light of enactment of 18 U.S.C. § 3118 and its applicability at the time of this offense, Defendant's motion to suppress as to the offered chemical test and her refusal must be denied. This section controls, and Defendant refused to take the test that was available. Her refusal is admissible at trial.

### IV.

█ One additional issue must be taken up concerning § 3118. That deals with the issue of denial of driving privileges. The *Jerge* case involved the prosecution of the defendant for DUI and related traffic charges, as well as the refusal to take a test. The defendant was acquitted of all traffic charges, but found guilty of the refusal to take a test. The court in that case treated § 3118(b) as a criminal provision that was subject to formal criminal prosecution.

This Court has reviewed § 3118(b) carefully and disagrees with the view of § 3118(b) as expressed in *Jerge*. A careful review of the section provides no basis for a criminal prosecution under it. This section, as well as the others in this part of the United States Code, deals with procedural matters dealing with evidence. The section provides no criminal penalty for failing to abide by it. The loss of driving privileges within the military reservation is an administrative matter, not a function for court prosecution. If a driver refuses to take a test, then denial of driving privileges *shall* occur on the date of arrest for that offense. That denial shall be handled by the agency involved. It should be noted that denial of driving privileges is *mandatory* for failing to take such test. Though § 3118(b) does not provide for judicial review, it is also not precluded. Certainly, a mandamus action would lie to this Court if the provisions of § 3118 were not followed and a denial of driving privileges had occurred. See 28 U.S.C. § 1361.

In conjunction with a refusal to take a chemical test, military authorities have the option of utilizing the provisions of 18 U.S.C. § 1382. This section allows for issuance of bar letters that prohibit return of an individual to the military base. Though this section provides a substantial weapon for military base authorities, it will also mean that prosecution of cases will not be available at Fort Carson itself. In all such cases, the prosecution will have to occur off-post, as 18 U.S.C. § 1382 does not provide any exception for attendance at court.

In this case, the Court is unaware of whether or not Defendant has had her driving privileges denied at Fort Carson. The Court is also unaware of whether an order under 18 U.S.C. § 1382 has been given to her. If either action has been taken, then the Court shall be so notified in writing.

IT IS HEREBY ORDERED that Defendant's motion to suppress the refusal to take a chemical test is denied; and

IT IS FURTHER ORDERED that this matter is set for status conference.