STATE OF NEVADA, DEPARTMENT OF MOTOR VEHICLES AND PUBLIC SAFETY, APPELLANT, v. ROBERT E. LOVETT, RESPONDENT.

No. 23669

May 19, 1994 874 P.2d 1247

*Frankie Sue Del Papa,* Attorney General, and *Laurie B. Foremaster,* Deputy Attorney General, Carson City, for Appellant.

*John G. Watkins*, Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

The State of Nevada, Department of Motor Vehicles and Public Safety ("DMV"), asks this court to hold that federal park rangers are police officers within the meaning of the Nevada implied consent laws, and that they are therefore authorized to serve as agents of the DMV in revoking the driving privileges of Nevada

motorists. We hold that the broad language of the relevant statutes supports this construction. In addition, we find no persuasive reason to hold that applicable federal regulations were intended to thwart a state's interest in revoking the state driver's license of a suspected drunk driver who refuses to submit to an evidentiary test to determine blood alcohol level, even when that test was requested by a federal park service ranger. Accordingly, we reverse the district court's order reversing the revocation of respondent's driving privileges by the DMV.

On May 6, 1991 National Park Service Ranger Ryan Regnell ("Regnell") arrested respondent Robert Edward Lovett ("Lovett") for operating a motor vehicle while under the influence of alcohol in the Lake Mead National Recreation Area ("LMNRA"), in violation of 36 C.F.R. § 4.23 (1992).[1] Although Regnell initiated the stop inside the LMNRA, Lovett did not stop until he was outside the federal park. Regnell took Lovett into custody, issued a federal citation and explained Lovett's obligation to provide samples of his blood alcohol content under federal law and under the Nevada implied consent statutes.[2] Lovett refused to give samples that would indicate blood alcohol content, stating that he would rather lose his license than take any test.

Regnell then served Lovett with a Notice of Revocation of driver's license, and completed an Officer's Certification of Cause form, mandatory procedures for "police officers" under the Nevada implied consent statutes. Regnell, as "agent" for the DMV, then seized Lovett's license.[3] A DMV hearing officer upheld the revocation on administrative review. The district court granted Lovett's petition for judicial review, reversed the hearing officer and reinstated Lovett's driving privileges, and the state appealed.

---

[1] 36 C.F.R. § 4.23 (1992) provides, in relevant part, that "[o]perating or being in actual physical control of a motor vehicle is prohibited while . . . [u]nder the influence of alcohol . . . ."

[2] NRS 484.383, the state statute imposing this obligation, provides that "any person who drives . . . a vehicle on a highway or on premises to which the public has access shall be deemed to have given his consent to an evidentiary test [to determine] the alcoholic content of his blood . . . ."

36 C.F.R. §§ 4.23(c)(1), (2) (1992), the federal provisions requiring blood testing, provide that "[a]t the request . . . of an authorized person who has probable cause to believe that an operator of a motor vehicle within a park area [is driving while under the influence] the operator shall submit to [a test]."

[3] NRS 484.385(1) provides that, "As agent for the department, the officer who directed that a test be given . . . shall immediately serve an order of revocation of the license . . . on a person who fails to submit to the test . . . [and] shall immediately transmit the person's license . . . to the department along with [a] written certificate [of cause]."

Construction of a statute is a question of law subject to de novo review. NRS 233B.135(3)(d); *American Int'l Vacations v. Mac-Bride*, 99 Nev. 324, 326, 661 P.2d 1301, 1302 (1983). Accordingly, we consider anew the arguments raised by Lovett below.

Lovett argues that a federal officer may not revoke his license because the state implied consent statutes have not been "incorporated" into federal law. He relies on federal authority to support this position. We note at the outset, however, that this case is fundamentally different from the federal cases involving license revocation. *See infra.* In the instant case it was the state, not the federal government, that revoked Lovett's license. Thus, we view the dispositive inquiry to be whether Nevada law provides that federal rangers are police officers. If the Nevada statute so provides, federal rangers are authorized to act as agents in seizing and revoking a Nevada driver's license on behalf of the state, specifically the DMV. We conclude that the broad language in the relevant statutes permits this construction.

The Nevada implied consent statute provides that any driver on a "highway" or other "premises to which the public has access," is deemed to have given consent to an evidentiary test to determine blood alcohol level, when such test is "administered at the direction of a *police officer* having reasonable grounds to believe that the person [was driving while under the influence]." NRS 484.383 (emphasis added). If a driver refuses a test, the requesting officer must revoke the driver's license. NRS 484.384.[4]

"Police officer" is defined, in the "traffic laws" chapter of the Nevada statutes, as "*every officer* authorized to direct or regulate traffic or to make arrests for violations of traffic laws, ordinances or regulations." NRS 484.118 (emphasis added). Park service rangers are authorized by federal regulations to make arrests within their territories for violations of state traffic laws. These regulations provide that "[u]nless specifically addressed by regulations in this chapter, traffic and the use of vehicles within a park area are governed by State law . . . . Violating a part of State law is prohibited." 36 C.F.R. § 4.2(a), (b) (1992).

The DMV argues that because federal rangers are authorized to make arrests for violations of traffic laws, that Regnell falls within the definition of "police officer." The plain meaning of the

---

[4]The police officer must serve an order of revocation of driver's license on the person who failed to submit to an evidentiary test, and must seize the license. NRS 484.385(1). The officer must also transmit the license to the DMV, together with a written certificate that the officer had reasonable grounds to believe the person had been driving while under the influence and refused to submit to a blood alcohol test. NRS 484.385(2)(b).

text supports this construction. Lovett argues that the provision was intended to apply only to state police officers. He also relies on the text of the statute for his position.

The statute does not, on its face, apply only to state police officers; nor does it apply to officers authorized only by the state to make arrests for violations of state traffic laws. Lovett does not point to text or legislative history to support his position, which is at odds with the plain meaning of the statute.

Lovett appears to argue that the statute is open to varying interpretations. Although we consider the statute to be sufficiently clear, we also note that where a statute is susceptible to more than one interpretation it should be construed "in line with what reason and public policy would indicate the legislature intended." State, Dep't Mtr. Vehicles v. Vezeris, 102 Nev. 232, 236, 720 P.2d 1208, 1211 (1986). Moreover, statutes are generally construed with a view to promoting, rather than defeating, legislative policy behind them. Ebarb v. State, Dep't of Mtr. Vehicles, 107 Nev. 985, 987, 822 P.2d 1120, 1122 (1991).

This court has liberally construed the implied consent statutes to advance the goal of keeping drunk drivers off the streets. State, Dep't of Mtr. Vehicles v. Kinkade, 107 Nev. 257, 259, 810 P.2d 1201, 1202 (1991); Ebarb, 107 Nev. at 987, 822 P.2d at 1122. Construing the instant provision to include federal officers as police officers within the meaning of Nevada law advances this goal. In the absence of any indication by the legislature that federal officers are not to be considered police officers under the statute, we decline to construe the statute narrowly to defeat this purpose.

Accordingly, we conclude that a federal park service ranger is a police officer within the meaning of the Nevada statute defining that term. As a result, a park ranger may be considered an agent of the department in revoking a license.

Lovett argues that Regnell could not revoke his driver's license under Nevada's implied consent provision, because that provision has not been "incorporated" into federal law. In this case, however, Regnell did not read the implied consent admonishment and revoke Lovett's license under his authority as a federal officer. He was acting as an agent of the state DMV, which revoked Lovett's license. This distinction is fundamental.

Lovett cites a number of cases holding that license revocation schemes have not been incorporated into federal law under the Assimilative Crimes Act, 18 U.S.C. § 13 (1988) ("the Act"),

and that federal judges are therefore without jurisdiction to revoke a state license. *See, e.g.,* U.S. v. Snyder, 852 F.2d 471, 474-75 (9th Cir. 1988); U.S. v. Rowe, 599 F.2d 1319, 1320 (4th Cir. 1979); U.S. v. Best, 573 F.2d 1095, 1100 (9th Cir. 1978); U.S. v. Love, 141 F.R.D. 315 (D. Colo. 1992). Under these cases, federal courts were prohibited from revoking state-issued driver's licenses based upon state implied consent laws because such revocation is administrative, and is not a criminal punishment within the meaning of the Act. *Id.*

We do not dispute that these cases appropriately concluded that federal judges lack authority to revoke a state-issued driver's license as punishment for a federal offense. However, it is one matter to limit a federal judge to federal sanctions when sentencing a defendant charged under federal law; it is quite another to hold that Congress intended to foreclose legitimate state action through failing to "incorporate" implied consent laws into federal law.

▮▮▮▮▮▮▮

In any event, the Act is not implicated when there are governing federal regulations. *See* U.S. v. Palmer, 945 F.2d 246 (9th Cir. 1991) (federal regulations, not the Act, were applicable when defendant charged with driving under the influence in national park); U.S. v. Spivey, 781 F.Supp. 676, 678 (D. Haw. 1991). The National Park Service has enacted regulations to govern "traffic and the use of vehicles" in the federal parks. *See Palmer,* 945 F.2d at 246; 36 C.F.R. § 4.2. (1992). These regulations therefore govern this controversy.

The mandate of the regulations governing traffic in federal parks is broad. The regulations provide that *all* state traffic and vehicle laws are applicable in federal parks except those "specifically addressed" in the regulations. *See Palmer,* 945 F.2d at 246; 36 C.F.R. § 4.2 (1992). The regulations do not purport to limit the applicability of state law to substantive criminal measures alone. *See* 52 Fed. Reg. 10,675 (1987) (qualifications of those administering tests and their liability left to state law and stricter state intoxication levels supercede federal law). Nor do the regulations specifically address implied consent or license revocation.

We view the implied consent provisions as applicable to Lovett's conduct, even if Regnell or the federal district courts would be powerless to revoke his driver's license thereunder. *See Snyder,* 852 F.2d at 474-75 (even if federal law incorporated administrative sanctions federalism principles would preclude federal revocation of a state license); U.S. v. Knott, 722 F. Supp. 1365, 1366-67 (E.D. Va. 1989) (only federal law may give federal court power to revoke state driver's license); *Love,* 141 F.R.D. at

318 (federal judge may not revoke state license under regulations).

As a result, Lovett was deemed under Nevada law to have given consent to a blood alcohol test, so long as that test was requested by an individual determined to be a "police officer" under state law. Since we have held that Regnell so qualifies, the state DMV was entitled to revoke Lovett's license for his refusal to submit to the test. As a result, Lovett's incorporation argument must fail.

Moreover, Lovett's incorporation argument, as applied to the regulations, is more properly styled as a preemption argument, involving an inquiry into whether the controverted provision was "specifically addressed" in the regulations. Preemption analysis is, fundamentally, a task of statutory construction. *See* Laurence Tribe, *American Constitutional Law* § 6-29 at 510 (2d ed. 1988). In addition, there is a reluctance to find preemption of otherwise legitimate state action in ambiguous cases. *See id.* § 6-25 at 479.

The regulations provide that "[u]nless *specifically addressed* by regulations in this chapter, traffic and the use of vehicles within a park area are governed by State law . . . ." 36 C.F.R. § 4.2 (1992), (emphasis added). The comments to the rulemakings further explain that state traffic provisions are superceded by the regulations where state provisions "conflict with" or "duplicate" provisions of the federal regulations. *See* 52 Fed. Reg. 10,678 (1987) ("[these regulations] supersede any State . . . provisions that might conflict with or duplicate these sections and must be applied by NPS law enforcement personnel in lieu of State law").

Although sanctions for refusing to submit to a blood alcohol test are addressed in the regulations, implied consent and license revocation are not "specifically addressed." Moreover, the state provision resulting in revocation of a state-issued driver's license neither duplicates nor conflicts with federal sanctions. Federal sanctions under the regulations are limited to admissibility of the fact of refusal at trial and issuance of a citation for failure to submit to a requested blood alcohol test. 36 C.F.R. § 4.23(c)(2) (1992).[5] When a motorist is prosecuted in a federal forum, however, state sanctions are limited to license revocation.

_____

[5]Federal judges may also revoke the driving privileges of a driver who failed to submit to a requested blood alcohol test, limited to the federal enclave, under a section of the United States Code. *See* 18 U.S.C. § 3118 (1993). However, as the sanction is limited to the federal enclave and is only

Since the dual sanctions neither conflict with nor duplicate each other, they may co-exist without frustrating the purpose of either scheme or the authority of either sovereign. As a result, we decline to find that Congress intended to preempt the authority of a state to revoke a state-issued driver's license when a suspected drunk driver refuses to submit to a blood alcohol test. In the absence of a clear signal from Congress that it intended the federal regulations to preempt revocation of a state-issued driver's license by the issuing state, we decline to find preemption.

We conclude that the state action in revoking Lovett's license was proper under the relevant statutes and regulations. Accordingly, we reverse the district court order reinstating Lovett's driving privileges and remand to the district court with instructions to issue an order reinstating the order of the DMV hearing officer upholding the revocation of Lovett's license.

SPRINGER, J., dissenting:

I dissent because a park ranger is not a "police officer," as defined by NRS 484.383, and, as a federal officer, does not have the state power to carry out the tests and directions provided in that statute.

A federal officer made the arrest in this case pursuant to federal law. In the park area federal regulations have adopted state traffic laws, and violating state traffic laws "is prohibited" in the park. Thus, violating state traffic laws (by, for example, driving on the wrong side of the road) constitutes violation of federal regulations and subjects the offender to *federal sanctions*. Federal enforcement officers are necessarily enforcing *federal traffic laws;* they are, of course, not empowered by either the state or the federal government to enforce *state* traffic laws.

Lovett was prosecuted under federal law; but, because Lovett was also found driving under the influence outside of the federal reservation and in state territory, the federal officer undertook to enforce state law by carrying out the functions of state "police officers" that are authorized under our state statute, NRS 484.383. The officer in this case is a federal officer and not a state "police officer" and as such has no authority to enforce state law. The same situation would arise if a Texas Ranger attempted to enforce a Las Vegas traffic ordinance in Las Vegas. The federal officer has no authority to act as state "police officer" in this

---

enforceable by a federal judge, this provision does not conflict with or duplicate the state's broader sanction of revoking the license altogether.

case, unless, of course, he has been deputized as a state officer and is thus empowered to enforce Nevada law.

I gather from the record that the practice of allowing federal park officers to act as state agents or officials in cases like this is as a matter of convenience. This practice is clearly out of order, however, and should be discontinued. I will not elaborate further, as I believe to be highly probable that when the appropriate federal officials get a copy of this Opinion, they will see the obvious and understand that federal officers have no power to enforce state law. This unlawful practice will then be stopped, and the problem will go away.