In re HUGO GALVEZ and THELMA GALVEZ, Debtors.

No. 32643

December 13, 1999

990 P.2d 187

*Christopher T. Stead,* Las Vegas, for Debtors.

*Lisowski Law Firm* and *Elizabeth E. Stephens,* Las Vegas, for Trustee, Larry Bertsch.

# OPINION

*Per Curiam:*

## SUMMARY

The sole issue presented to this court is whether an independent contractor's real estate commission is exempt under NRS 21.090(1)(g) in a bankruptcy proceeding. With regard to this issue, we certify to the United States Bankruptcy Court for the District of Nevada that a real estate commission is not exempt under NRS 21.090(1)(g) because this statutory exemption applies solely to periodic payments, and not to lump sum payments of compensation like a real estate commission.

## FACTS

The relevant facts of this matter are not in dispute. In 1997, Hugo Galvez ("Hugo") worked as a licensed real estate agent associated with Medallion Real Estate. Hugo was an independent contractor and had no employees working for him. Hugo considered himself self-employed for tax purposes. Indeed, on Hugo's 1995 and 1996 tax returns, he filed a profit and loss statement for his real estate business, paid self-employment tax, took depreciation on his car, and deducted telephone costs, referral fees, dues, and publications as business expenses.

On or about December 5, 1997, Hugo and his wife, Thelma Galvez (collectively hereinafter the "debtors") filed a voluntary petition for bankruptcy seeking relief under Chapter 7, Title 11 of the United States Code (the "petition"). Larry L. Bertsch ("Bertsch") was duly appointed as panel trustee. At the meeting of creditors held pursuant to 11 U.S.C. § 341(a), Bertsch requested that the debtors turn over funds from a real estate commission totaling $3,633.00, which was in escrow at the time the petition was filed.

Believing that a portion of this commission was exempt under NRS 21.090(1)(g), the debtors amended their schedules. On schedule C of the debtors' amended petition, the debtors claimed an exemption for a real estate sales commission of $2,725.00, seventy-five percent of the commission in escrow. This commission was generated entirely through Hugo's personal services and was not earned in whole or in part as a referral or finder's fee.

Bertsch objected to the exemption, arguing that Hugo's commission was properly characterized as an account receivable, and thus was not "disposable earnings" exempt under NRS 21.090(1)(g). Oral argument on this issue was heard by the bankruptcy court on March 25, 1998. Thereafter, the bankruptcy court certified the issue to this court for determination.

## DISCUSSION

Whether commissions earned by an independent contractor real estate agent for personal services fall within the wage garnishment exemption set forth in NRS 21.090 is an issue of first impression in Nevada. The wage garnishment exemption has roots in our state constitution, which provides:

> The privilege of the debtor to enjoy the necessary comforts of life shall be recognized by wholesome laws, *exempting a reasonable amount of property from seizure or sale for payment of any debts* . . . .

Nev. Const. art. 1, § 14 (emphasis added). To achieve this constitutional end, the Nevada Legislature enacted NRS 21.090. *See* Elder v. Williams, 16 Nev. 416 (1882).

NRS 21.090 provides, in relevant part, as follows:

> 1. The following property is exempt from execution, except as otherwise specifically provided in this section:
>
> . . . .
>
> (g) For any period, *75 percent of the disposable earnings of a judgment debtor during that period,* . . . . "[D]isposable earnings" means that part of the earnings of a judgment debtor remaining after the deduction from those earnings of any amounts required by law, to be withheld.

(emphasis added). The legislative purpose of NRS 21.090 is "to secure to the debtor the necessary means of gaining a livelihood, while doing as little injury as possible to the creditor." Krieg v. Fellows, 21 Nev. 307, 310, 30 P. 994, 995 (1892).

With regard to the scope of NRS 21.090, the debtors ask this court to broadly define "exempted earnings" as those wages earned through personal services, regardless whether these wages were periodic, were earned by an independent contractor, or were an account payable.[1] We cannot interpret NRS 21.090 in this man-

---

[1] We recognize that some jurisdictions have interpreted the Consumer Credit Protection Act to exempt all wages earned through personal services, and have drawn no distinction based on the form of the compensation or the independent contractor status of the worker. *See, e.g.,* Kobernusz v. Kobernusz, 160 B.R. 844, 847 (Bankr. D. Colo. 1993); In re Duncan, 140 B.R. 210, 213 (Bankr. E.D. Tenn. 1992); Marian Health Ctr. v. Cooks, 451 N.W.2d 846, 848 (Iowa Ct. App. 1989); Gerry Elson Agency, Inc. v. Muck, 509 S.W.2d 750, 753 (Mo. Ct. App. 1974); First Nat'l Bank of Guthrie v. Brown, 579 P.2d 825 (Okla. 1978).

We further recognize that other jurisdictions, relying on the identical language and congressional intent of the Consumer Credit Protection Act, have disregarded the form of the compensation and exempted only those wages earned through an employee-employer relationship. *See, e.g.,* Usery v. First Nat'l Bank of Ariz., 586 F.2d 104 (9th Cir. 1978); In re Moriarty, 27 B.R.

ner because it is clear from our analysis that NRS 21.090 only exempts periodic payments of earnings.

■■■■■■■■

Statutory construction is a question of law that is reviewed *de novo*. State, Dep't of Mtr. Vehicles v. Lovett, 110 Nev. 473, 476, 874 P.2d 1247, 1249 (1994). If statutory language is plain and unambiguous, this court has held that it will not go beyond its literal meaning. Maxwell v. SIIS, 109 Nev. 327, 330, 849 P.2d 267, 270 (1993). However, if statutory language is ambiguous, the meaning of the words used in the statute may be discerned by examining the legislature's intent. Rodgers v. Rodgers, 110 Nev. 1370, 1373, 887 P.2d 269, 271 (1994).

Although the definition of "earnings" is not further defined in NRS 21.090 or in an accompanying Nevada statute, we have looked to the Consumer Credit Protection Act ("CCPA"), for guidance *see* 15 U.S.C. § 1601 et seq. (1998), as the Nevada Legislature amended NRS 21.090 in 1969 to conform to the CCPA. *See* Hearing on A.B. 349 Before the Judiciary Comm., 55th Leg. (Nev., April 9, 1969); *see also* Securities Investment Co. v. Donnelley, 89 Nev. 341, 347 n.6, 513 P.2d 1238, 1242 n.6 (1973) (noting that "the courts of the adopting state shall usually follow the construction placed on the statute in the jurisdiction of its inception").

The CCPA defines "earnings" as "compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus or otherwise, and includes periodic payments pursuant to a pension or retirement program." 15 U.S.C. § 1672(a) (1998). The CCPA further defines "disposable earnings" as "that part of the earnings of any individual remaining after the deduction from those earnings of any amounts required by law to be withheld." 15 U.S.C. § 1673(b) (1998).

■■■■■■

In interpreting the aforementioned statutes, the United States Supreme Court has held that the wage garnishment exemption only exempts periodic payments of compensation and does not apply to every asset traceable in some form to such compensation. *See* Kokoszka v. Belford, 417 U.S. 642, 651 (1974); *accord* Pallante v. International Venture Inv., 622 F. Supp. 667, 669 (N.D. Ohio 1985); Fisher Body v. Lincoln Nat'l Bank & Trust

---

73, 74 (Bankr. M.D. Fla. 1983); Coward v. Smith, 636 P.2d 793, 797 (Kan. Ct. App. 1981); Olson v. Townsend, 530 A.2d 566, 568 (Vt. 1987); Melby & Co. Bank v. Anderson, 276 N.W.2d 274 (Wis. 1979).

We reject these jurisdictions' interpretation of the Consumer Credit Protection Act and conclude that this act only exempts "earnings" that are periodic in nature.

Co., 563 N.E.2d 149 (Ind. Ct. App. 1990). In so doing, the Court reasoned that:

> The Congress did not enact the [CCPA] in a vacuum.
>
> . . . .
>
> An examination of the legislative history of the [CCPA] makes it clear that, while it was enacted against the background of the Bankruptcy Act, it was not intended to alter the clear purpose of the latter Act to assemble, once a bankruptcy petition is filed, all of the debtor's assets for the benefit of the creditors.
>
> . . . .
>
> *There is every indication that Congress, in an effort to avoid the necessity of bankruptcy, sought to regulate garnishment in its usual sense as a levy on periodic payments of compensation needed to support the wage earner and his family on a week-to-week, month-to-month basis.* There is no indication, however, that Congress intended to alter the delicate balance of a debtor's protections and obligations during the bankruptcy procedure.

417 U.S. at 651 (citations omitted) (emphasis added). We consider this reasoning compelling, as it attempts to balance the inherent tension between the need to protect debtors from predatory garnishments and the need to secure assets to meet the debtors' obligations to the creditors. Therefore, in light of the holding in *Kokoszka,* we conclude that NRS 21.090(1)(g) only exempts "earnings" that are periodic in nature.

Applying this conclusion to the present matter, it is clear that a real estate commission does not fall within the purview of NRS 21.090(1)(g). A real estate commission is paid at the close of escrow in a single, lump sum, rather than periodically on a weekly or monthly basis. Accordingly, a real estate commission is not periodic compensation exempted under NRS 21.090(1)(g).

## CONCLUSION

Based on the foregoing analysis, we conclude that NRS 21.090(1)(g) exempts only periodic payments of compensation. Therefore, NRS 21.090(1)(g) did not exempt the real estate commission owed to Hugo because it was payable in a lump sum, rather than on a periodic basis. Bertsch, therefore, had the right to treat the real estate commission as property of the bankruptcy estate.