RENEE DIAMOND, ADMINISTRATOR OF THE NEVADA MANUFACTURED HOUSING DIVISION, APPELLANT, v. ROBERT L. SWICK, STELLA L. SWICK, MARVIN J. WEISBERG, AND SILVER STATE MOBILE HOMES, INC., RESPONDENTS.

No. 35150

August 17, 2001                              28 P.3d 1087

*Frankie Sue Del Papa*, Attorney General, and *Brian T. Kunzi*, Deputy Attorney General, Carson City, for Appellant.

*Roger P. Croteau & Associates, Ltd.*, Las Vegas, for Respondents.

## OPINION

*Per Curiam:*

This appeal involves whether false information was provided by a manufactured home dealer to a lender, thereby violating NRS 489.401(7). State law prohibits particular mobile and manufactured home dealer conduct and grants regulatory authority to appellant Renee Diamond, Administrator of the Nevada Manufactured Housing Division ("Division"). NRS 489.381 authorizes administrative disciplinary action against licensed mobile and manufactured home dealers. The Division filed a complaint against respondents Robert L. Swick, Stella L. Swick, and Marvin J. Weisberg, employees of respondent Silver State Mobile Homes, Inc. (collectively "Silver State"), seeking to revoke their dealer licenses for allegedly submitting false information to lending institutions by representing dealer rebates as actual cash down payments on credit applications.

The hearing officer concluded that knowledge of the information's falsity precluded a lender from receiving "false" information under NRS 489.401(7). In addition, the hearing officer concluded that under the statute, the financing statements must contain fraudulent information that would lead a lender to finance a home sale that it would not otherwise have financed. The dis-

trict court affirmed the administrative determination, holding that proof of fraud must be established, and denied the Division's petition for judicial review. The Division now appeals, contending that the hearing officer's decision was affected by an error of law.

The two novel issues presented are (1) whether a manufactured home dealer's submission to a lender of a contract representing a dealer rebate as a cash down payment will be deemed "false" for the purposes of NRS 489.401(7), even if the lender knew the falsity of the information; and (2) whether the Division must also establish an intent to defraud or detrimental reliance by a lender, to prove a manufactured home dealer violated NRS 489.401(7). We conclude that the statute requires neither fraudulent intent nor detrimental reliance.

## FACTS

On November 20, 1997, the Division filed a complaint alleging that Silver State, on seventy-three occasions, prepared and submitted to lenders credit applications misstating the cash down payment amount actually tendered by a manufactured or mobile home purchaser. Specifically, the complaint alleged that Silver State would represent on a prospective purchaser's credit application a dealer rebate, or a combination of a rebate and cash down payment, exclusively as an actual cash down payment.[1] The applications were submitted to three different lending institutions, CIT Financial ("CIT"), Deutsche Financial Corporation ("Deutsche"), and Galaxy Financial ("Galaxy"). Of the three institutions, only CIT was unaware that Silver State was employing this practice. Silver State orally informed Deutsche of this system while Galaxy knew of this particular method because it is an alter-ego of Silver State.

Robert Swick, General Manager of Silver State, testified before a hearing officer that the alleged cash down payments were actually dealer rebates, part of an established rebate program. He stated that funding for dealer rebates was derived from Silver State's own profits. Swick, however, also testified that in transactions where the rebate did not represent a sufficient cash down payment amount, the selling price of the manufactured or mobile home was increased.

On December 24, 1998, at the conclusion of the testimony, the hearing officer issued a decision and order finding (1) substantial evidence that Silver State's credit applications filed with CIT contained false information with respect to four purchasers; (2) Silver State violated NRS 489.401(7)(a)-(c) in submitting the four incorrect credit applications to CIT; (3) Galaxy was operated by the

---

[1]The credit application contains separate and distinct blanks where the dealer rebate and cash down payment amounts are to be recorded.

same persons operating Silver State; therefore, any credit applications submitted to Galaxy could not contain fraudulent information that would lead Galaxy to finance a manufactured or mobile home sale that it would not otherwise finance; (4) the Division failed to establish by a preponderance of the evidence that Silver State violated any section of NRS Chapter 489 by submitting false documents to Galaxy; and (5) the Division failed to establish by substantial, reliable, and probative evidence that Silver State violated any section of NRS Chapter 489 with regard to credit applications it submitted to Deutsche.

The Division subsequently filed a petition for judicial review with the district court. In its amended order denying the petition the district court determined that NRS 489.401(7)(b) required proof of fraud, the elements of which the Division had not established with respect to Galaxy and Deutsche.

## DISCUSSION

### Standard of review

NRS 233B.135(3), governing judicial review, states in relevant part:

> The court may remand or affirm the final decision or set it aside in whole or in part if substantial rights of the petitioner have been prejudiced because the final decision of the agency is:
> (a) In violation of constitutional or statutory provisions;
> (b) In excess of the statutory authority of the agency;
> (c) Made upon unlawful procedure; [or]
> (d) Affected by other *error of law*[.]

(Emphasis added.) The burden of proof is on the party attacking or resisting an administrative agency's decision.[2]

### Statutory construction

Independent appellate review of an agency decision, rather than a more deferential standard of review, is appropriate when the agency's decision rests on questions of law, such as statutory construction.[3] The construction of a statute is a question of law subject to review de novo.[4]

---

[2]*See* NRS 233B.135(2).

[3]*Tighe v. Las Vegas Metro. Police Dep't*, 110 Nev. 632, 634-35, 877 P.2d 1032, 1034 (1994).

[4]NRS 233B.135(3); *State, Dep't of Mtr. Vehicles v. Lovett*, 110 Nev. 473, 476, 874 P.2d 1247, 1249 (1994).

NRS 489.381 authorizes administrative disciplinary action against licensees, including fines and/or license denial, suspension or revocation. NRS 489.401(7) prohibits

> *[r]epresenting* to *any* lender, guaranteeing agency or other interested party, orally or *through the preparation of false documents*:
> (a) An amount in excess of the actual sales price;
> (b) A *false* amount as the down payment, earnest money deposit or other valuable consideration;
> (c) Terms differing from those actually agreed upon; or
> (d) *False* information on a credit application.

(Emphasis added.)

This court has consistently held that when there is no ambiguity in a statute, there is no opportunity for judicial construction, and the law must be followed unless it yields an absurd result.[5] In construing a statute, this court must give effect to the literal meaning of its words.[6]

The Division does not contend that a particular statutory word or phrase is either vague or ambiguous. Rather, it asserts that fraudulent intent and actual reliance need not be proven under NRS 489.401(7) and, moreover, that the district court failed to specify the particular elements of fraud embodied within the statute. Silver State responds that a plain reading of the statute requires a showing that a misrepresentation occurred and that the innocent party relied upon the false information to its detriment.

We conclude that a plain reading reveals that NRS 489.401(7) does not require proof of either fraudulent intent or detrimental reliance.

First, the word "represent" is defined as a "presentation of fact—either by words or by conduct—made to induce someone to act, esp[ecially] to enter into a contract."[7] Silver State contends that the dictionary definition requires that the representation be calculated to mislead, and that because Deutsche and Galaxy knew about the rebate program, the statute was not violated. However, neither the dictionary definition of the word "representation"[8] nor any legal authority supports such a claim.

---

[5] *SIIS v. Engel*, 114 Nev. 1372, 1376, 971 P.2d 793, 796 (1998) (citing *Randono v. CUNA Mutual Ins. Group*, 106 Nev. 371, 374, 793 P.2d 1324, 1326 (1990)).

[6] *State v. Webster*, 88 Nev. 690, 696, 504 P.2d 1316, 1320 (1972).

[7] *Black's Law Dictionary* 1045 (abridged 7th ed. 2000).

[8] The word "misrepresentation," as opposed to "representation," is defined as the "act of making a false or misleading statement about something, usu. with the intent to deceive." *Id.* at 813.

The term "representing" is plain and unambiguous. Whether or not the lending institution was cognizant that the alleged cash down payment was in reality merely a dealer rebate, Silver State made a presentation of certain written words on the credit applications that facilitated loan application approval. Knowledge of the exact or fictitious nature of the actual presentation fails to alter the definition of the word "representing." The statute does not require either an intentionally false representation or misrepresentation; it simply calls for a false representation.

Second, the word "false" is defined as "[u]ntrue," "[d]eceitful; lying," and "[n]ot genuine; inauthentic," and is qualified with the statement that "[w]hat is false can be so by intent, by accident, or by mistake."[9] This word is plain and unambiguous.

The Division argues that the Legislature did not intend that actionable fraud must be proven to support a disciplinary action, under NRS 489.401(7), based on the preparation of false credit applications. Specifically, the Division points to explicit references from NRS 489.401(3) addressing material representations likely to induce reliance and NRS 489.421(9) concerning fraudulent dealing.

"It is a well-recognized tenet of statutory construction that multiple legislative provisions be construed as a whole, and where possible, a statute should be read to give plain meaning to all its parts."[10] Other words or phrases used in the statute or separate subsections of the statute can be reviewed to determine the meaning and purpose of the statute.[11]

NRS 489.401(3), a separate subsection of the statute in question, provides for disciplinary action upon the "[m]aking [of] any substantial misrepresentation or false promise which is likely to influence, persuade or induce, or continually failing to fulfill promises to sell, breaching agreements or contracts or making false promises by any means." Additionally, NRS 489.421(9), a separate section of a statute that provides additional grounds for disciplinary action, prohibits "[a]ny other conduct that constitutes deceitful, fraudulent or dishonest dealing."

The Legislature's omission of the terms "misrepresentation" and "fraud" from the text of NRS 489.401(7) creates the presumption that the Legislature did not intend to require proof of fraudulent intent or detrimental reliance as a prerequisite to dis-

---

[9]*Id.* at 489.

[10]*Gaines v. State*, 116 Nev. 359, 365, 998 P.2d 166, 169-70 (2000) (citing *Building & Constr. Trades v. Public Works*, 108 Nev. 605, 610, 836 P.2d 633, 636 (1992)).

[11]*See Bd. of County Comm'rs v. CMC of Nevada*, 99 Nev. 739, 744, 670 P.2d 102, 105 (1983).

ciplinary action against mobile and manufactured home dealers. This court has declared that its business does not include "fill[ing] in alleged legislative omissions based on conjecture as to what the legislature would or should have done."[12] Because both are explicitly referred to in separate sections of the same statutory chapter, the notions of misrepresentation and fraud were apparently within the Legislature's ready contemplation when NRS 489.401(7) was authored, discussed and enacted. The omission of the terms "misrepresentation" and "fraud" was intentional on the part of the legislators, and we will not substitute our judgment for theirs.

Therefore, we conclude that NRS 489.401(7) does not require a finding of either a fraudulent intent or actual reliance on the false representation to a lender's detriment. Silver State violated NRS 489.401(7) by presenting credit applications to Deutsche and Galaxy that falsely represented dealer rebates as cash down payments. These violations are not nullified by the direct lender's knowledge that the applications contained false information.

*Scope of the provision*

The statute does not unequivocally indicate that it was designed to protect lenders other than those whom the dealer contacts directly. We conclude, however, that the Legislature intended to protect all lenders involved with the mobile and manufactured home market, including those aware of a document's falsity. The Division points to language in NRS 489.401(7) prohibiting certain representations to "any lender" as evincing the Legislature's intent to protect the entire mobile and manufactured housing and lending industry. At the hearing, the Division introduced expert testimony illustrating that the misstatement of a dealer rebate as an actual cash down payment renders the entire transaction suspect because most contracts are ultimately sold to third parties on the secondary market.

According to Spencer Judd, Regional Manager for BankAmerica Housing Services, interest rate and credit standards differ based on the tendered down payment amount. Judd testified that when a customer has actual equity in a home, the customer's potential for repayment is improved. In his opinion, loans based on inaccurate information, and loans made in connection with nominal cash down payments, are subject to higher than average default rates. When misrepresented down payments create increased lender losses, that lender raises the interest rate on future loans in anticipation of additional losses and collection

---

[12]*McKay v. Board of Cty. Comm'r*, 103 Nev. 490, 492, 746 P.2d 124, 125 (1987).

costs. Judd further testified that loan contracts are sold or assigned into the secondary market based, in part, on the actual amount the home purchaser paid toward the total cost.

The purpose of NRS 489.401(7) is to protect the integrity of the entire mobile and manufactured home lending system by facilitating trustworthiness, full disclosure of accurate information, and fair dealing between dealers and all financing entities. NRS 489.401(7) is designed to protect lenders, guarantors, and any other interested party or intermediary involved in the mobile and manufactured home industry. Thus, the statute's scope includes those entities directly involved in a transaction, as well as entities that may be affected indirectly.

## CONCLUSION

The administrative determination regarding Deutsche and Galaxy was affected by an error of law. NRS 489.401(7)'s terms are plain and unambiguous and, therefore, fraudulent intent and actual reliance are not required to trigger the statute's protections.[13] We, therefore, affirm that portion of the district court's order pertaining to CIT, reverse that portion of the order denying judicial review as to Deutsche and Galaxy, and remand for proceedings consistent with this opinion.[14]

---

[13]Importantly, our ruling today should not be read or interpreted as prohibiting, discouraging or discrediting the utilization of dealer rebate programs. We find nothing illegal with a transaction that makes a rebate a down payment so long as the terms of the credit applications accurately state the dealer rebate figure as distinguished from the actual cash down payment figure when applicable.

[14]THE HONORABLE MIRIAM SHEARING, Justice, did not participate in the decision of this matter.