The FIRST NATIONAL BANK OF GUTHRIE, Oklahoma, a National Banking Corporation, Appellant,

v.

John M. BROWN, and Pennsylvania Life Insurance Company, a corporation, Appellees.

No. 50417.

Supreme Court of Oklahoma.

May 23, 1978.

Thomas R. Williams and Jeff L. Hirzel, Guthrie, for appellant.

David A. Davis, Oklahoma City, for appellee Brown.

Dickey, Markum & Dickey, Oklahoma City, for appellee Pennsylvania Life Ins. Co.

DAVISON, Justice:

In late 1975, John M. Brown, borrowed a little less than $17,000.00 from the First National Bank of Guthrie, the loans being evidenced by two separate notes. The loans, for personal use, were consumer credit loans. The loans were secured by a security agreement in a mobile home, an automobile, and by an assignment of certain commissions to be paid to Mr. Brown by an insurance company he worked for, Pennsylvania Life Insurance Company. The commissions assigned as collateral were renewable commissions, that is, commissions paid to Mr. Brown when policies he had initially sold were renewed.

Ultimately, Mr. Brown defaulted on both notes, leaving an unpaid balance of approximately $8,000.00. Mr. Brown went into bankruptcy, and both notes were discharged in the bankruptcy proceedings.

In May, 1976, the Bank brought an action against Mr. Brown and the Pennsylvania Life Insurance Company, seeking to enforce their assignment, which entitled them to future renewal commissions payable to Mr. Brown from Pennsylvania Life. Both Mr. Brown and Pennsylvania Life filed demurrers to the Bank's Petition, and the trial court sustained the demurrers. When the Bank apprised the court that it wished to stand on its Petition, the trial court dismissed the action. From that dismissal and sustaining of the demurrers, the Bank has perfected an appeal.

In sustaining the demurrers, the trial court held that the assignment of renewal commissions, which the Bank was attempting to enforce, was, pursuant to the provisions of Title 14A, 1971, Section 3–403, and other related statutes, unenforceable as a matter of law.

14A O.S.1971 § 3–403 provides:

"(1) *A lender may not take an assignment of earnings of the debtor for payment or as security for payment of a debt arising out of a consumer loan. An assignment of earnings in violation of this section is unenforceable* by the assignee of the earnings and revocable by the

debtor. This section does not prohibit an employee from authorizing deductions from his earnings if the authorization is revocable.

(2) A sale of unpaid earnings made in consideration of the payment of money to or for the account of the seller of the earnings is deemed to be a loan to him secured by an assignment of earnings." [Emphasis added]

"Earnings" is defined at 14A O.S.1971 § 1–301(8), which provides:

" 'Earnings' means *compensation paid* or payable to an individual or for his account *for personal services rendered or to be rendered by him, whether denominated as wages, salary, commissions, bonus, or otherwise,* and includes periodic payments pursuant to a pension, retirement, or disability program." [Emphasis added]

If the renewal commissions which were assigned to the Bank by Mr. Brown were "earnings", as defined above, the assignment is, under the provisions of 14A O.S. 1971 § 3–403, unenforceable. After examining the statutory definition of "earnings" and examining the Bank's Petition, together with the exhibits that were incorporated into the Petition by reference, we hold that any renewal commissions due Mr. Brown, under the provisions of the contract between him and Pennsylvania Life, constitute "earnings" under the above quoted definition.

In asserting that the renewal commissions were not "earnings", the Bank argues that Mr. Brown would receive the renewal commissions on every renewed policy which he had originally sold, *whether or not he did any additional work after making the initial sale;* the Bank then concludes that since the renewal commissions will be received though no additional work is done, the renewals are therefore not to be considered compensation for *personal services,* as no *personal services* are required in order to be entitled to the renewal commissions.

We do not agree with the Bank's analysis. We view such commissions as deferred compensation for making the initial sale and as an incentive to encourage the insurance agents to service their customers, in order to encourage renewals. Thus, the commissions constitute compensation for personal services, and accordingly come within the definition of "earnings". This being the case, Mr. Brown's assignment to the Bank of those earnings to secure the payment of his notes were in violation of the provisions of 14A O.S.1971 § 3–403, and pursuant to the provisions of that section, the assignment of such earnings is unenforceable. Thus the trial court was correct in sustaining the demurrers to the Petition.

■ We next consider the propriety of the trial court's awarding of a $200.00 attorney fee in favor of defendant Brown, under the authority of 12 O.S.1971 § 936 which provides:

"In any civil action to recover on an open account, a statement of account, account stated, *note,* bill, negotiable instrument, or contract relating to the purchase or sale of goods, wares, or merchandise, or for labor or services, unless otherwise provided by law or the contract which is the subject of the action, the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs." [Emphasis added]

The above quoted statute, as can readily be seen, only authorizes the awarding of attorney fees in very specific type cases— cases on open accounts, statement of account, account stated, note, bill, negotiable instrument, or contract relating to the purchase or sale of goods, wares or merchandise, or for labor or services. The suit before the trial court does not, however, fall within any of those categories. Although it is argued that the suit below was a suit on a *note,* it was in fact a suit to enforce a security agreement. Indeed, the suit could hardly be based upon the notes, as the notes were discharged in bankruptcy proceedings. The fact that proof of the notes' existence and default upon them must be shown in the action to enforce the security agreement, does not, once the notes are discharged in bankruptcy, make the suit one on a note.

The suit before the trial court was in essence an action against a specific fund—the fund serving as security on prior debts which had been defaulted. Accordingly, we rule that the trial court abused its discretion in granting an attorney fee under the provisions of 12 O.S.1971 § 936.

We do hold, however, that under the provisions of 14A O.S.1971 § 5–202(8), a court may award attorney fees incurred by the debtor if the creditor has violated the Consumer Credit Code, as adopted in Oklahoma. That subsection provides:

"In any case in which it is found that a creditor has violated this Act, *the court may award* reasonable attorney's fees incurred by the debtor." [Emphasis added]

Under the provisions of the above quoted statute, the trial court was vested with the discretion to award attorney fees against the creditor Bank, as the Bank violated the provisions of 14A O.S.1971 § 3–403, quoted above, which provides in part that, "A lender may not take an assignment of earnings of the debtor for payment or as security for payment of a debt arising out of a consumer loan." We think the clear intent of the statute was to prohibit the taking of such assignments by creditors, and that the taking of such an assignment constitutes a violation of the Consumer Credit Act, entitling the debtor to be awarded an attorney fee, at the discretion of the trial court. Although both this Section and Section 936 of Title 12, were cited to the trial court, the trial court chose to rely solely upon Section 936 of Title 12, in awarding attorney fees. As stated above, this was clearly error, and we must reverse the judgment of the trial court insofar as it awarded attorney fees under the provisions of Section 936 of Title 12. The court however clearly did not abuse its discretion in setting the amount of the attorney fee at $200.00. Had that amount been awarded under the appropriate statute, this Court would have no choice but to affirm it.

As the trial court had the authority to, at its discretion, award attorney fees, but did so incorrectly, we remand the case to the trial court to determine whether the court, in exercising its discretion, wishes to award the $200.00 fee under the provisions of 14A O.S.1971 § 5–202(8).

■ Lastly, we consider a request by appellee Brown to be awarded an additional attorney fee of $500.00 for expenses incurred in the preparation for his defense in this appeal. Under the provisions of 14A O.S.1971 § 5–202(8), debtor Brown is entitled to be awarded a fee for legal expenses incurred in the action before us, at the Court's discretion. We choose to exercise that discretion, and award appellee Brown attorney fees for the defense of the suit on appeal. We will however, not award a fee equal to the amount requested by the debtor, as part of the appeal was meritorious, there was no bad faith alleged on the part of the Bank, and the action was at least partially triggered by debtor Brown's default on his obligation to the Bank. Accordingly, we award appellee Brown an additional attorney fee of $200.00.

AFFIRMED IN PART; REVERSED IN PART; REMANDED WITH INSTRUCTIONS.

All of the Justices concur.