### In re Terry Lynn DUNCAN, Debtor.

### Bankruptcy No. 91–35307.

United States Bankruptcy Court,
E.D. Tennessee.

May 7, 1992.

---

John F. Weaver, Knoxville, Tenn., trustee.

Layman, O'Connor, Petty & Child, Jack W. Piper, Knoxville, Tenn., for debtor.

### MEMORANDUM ON TRUSTEE'S OBJECTION TO EXEMPTIONS

RICHARD S. STAIR, Jr., Bankruptcy Judge.

On December 11, 1991, the debtor amended Schedule C to his petition to claim an additional exemption as follows:

> Debtor amends Schedule C by adding as exempt personal property the disposable earnings of the debtor paid to him by Standard Life Insurance Company [1] generated from the renewal of life and health insurance policies which were sold by the debtor to the extent that those disposable earnings are exempt pursuant to TCA § 26–2–106. Said exemption is to be exercised for all such disposable earnings paid to the debtor subsequent to the filing of his Petition on October 22, 1991, including those earnings which may be paid in the future.

On February 10, 1992, the trustee, John F. Weaver, timely filed an objection contending that the debtor is not entitled to the exemption under Tennessee law in that at the time his petition was filed the debtor was no longer employed by Standard Life and Accident Insurance Company (Company); that the debtor is performing no services in exchange for his interest in the disputed renewal premiums; and that the property the debtor seeks to exempt does not represent the "disposable earnings" of the debtor for any periodic interval. Facts and documents essential to a resolution of the issues before the court are stipulated through written stipulations filed March 26, 1992.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(B) (West Supp.1992).

### I

The parties stipulate the following material facts:

1. The debtor filed a petition for relief herein under Chapter 7, title 11, United States Code, on October 22, 1991.

2. Prior to filing his petition, the debtor engaged in business as an insurance agency.

3. While engaging in business as an insurance agency, the debtor had an agency contract with Standard Life and Accident Insurance Company.

4. Pursuant to the contract, Standard Life and Accident Insurance Company would pay a commission or percentage to the debtor for his sale of an insurance policy when the policy was originally

---

1. The correct name is Standard Life and Accident Insurance Company.

written and would also pay a commission or percentage to the debtor as and when the policy was renewed.

5. Prior to the filing of his petition, the debtor ceased his selling of policies under the contract and ceased being an agent for Standard Life and Accident Insurance Company.

6. Prior to the filing of his petition, the debtor terminated his business as an insurance agency.

7. The debtor continues to receive commissions under the contract based upon renewals of the policies previously sold thereunder by the debtor.

8. The debtor will continue to be entitled to receive such a commission on the renewal of a policy as long as the policy is renewed.

9. Since before the filing of his petition, the debtor renders no services for the above payments.

10. Since before the filing of his petition, the debtor has not been in the employ of Standard Life and Accident Insurance Company.

Exhibit C to the parties' stipulations is a copy of the General Agency I Contract (Contract) executed by the debtor and Company on February 22, 1988. Paragraph 3 of the Contract provides that the debtor's relationship to the Company as a General Agent "shall be that of independent contractor." Paragraph 3 further provides that "[n]othing in this Contract shall be construed as creating the relationship of employer and employee." Reviewing the Contract in its entirety, the court concludes that the Company never intended the debtor to be, nor was the debtor anything other than, an independent contractor.

Paragraph 9 of the Contract governs the debtor's entitlement to commissions on policies produced by the debtor. This paragraph provides in material part:

The Company will pay to the ... [debtor] the First Year Commissions, Renewal Commissions, and Service Fees at the rates and for the policy years set forth on the Schedule of Commissions herein, when the respective premiums on policies personally produced by the ... [debtor] under the Schedule of Commissions are actually due and paid the Company....

II

Tenn.Code Ann. § 26–2–106 (1980), entitled *Maximum amount of disposable earnings exempt from garnishment—Garnishment costs*, provides in material part:

(a) The maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment may not exceed:

(1) Twenty-five percent (25%) of his disposable earnings for that week; or

(2) The amount by which his disposable earnings for that week exceed thirty (30) times the federal minimum hourly wage at the time the earnings for any pay period become due and payable, whichever is less.

(b) In the case of earnings for any pay period other than a week, an equivalent amount shall be in effect.

"Earnings" and "disposable earnings" are defined for purposes of Tenn.Code Ann. § 26–2–106 (1980) at Tenn.Code Ann. § 26–2–105 (1980) as follows:

(1) "Earnings" means the compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program;

(2) "Disposable earnings" means that part of the earnings of an individual remaining after the deduction from those earnings of any amounts required by law to be withheld[.]

III

Preliminarily, the court notes that the debtor does not contend that these postpetition commissions are anything other than property of the estate as that term is defined at 11 U.S.C.A. § 541(a) (West 1979 & Supp.1992). The only issues before the court are the trustee's contentions that the exemption is available only to employees rather than to independent contractors such as the debtor, and that, even if the

exemption is available to independent contractors, the renewal commissions at issue do not constitute compensation for personal services of the debtor as required by Tenn. Code Ann. § 26–2–105 (1980).

■ Because there is no Tennessee case law dispositive of either issue raised by the trustee, it is necessary to look to other jurisdictions for guidance. The analysis is made easier because state wage garnishment exemption statutes must comply with the federal Consumer Credit Protection Act.[2] Consequently, the language of most state wage garnishment exemption statutes, Tennessee included, is substantially identical to the language of 15 U.S.C.A. §§ 1672 and 1673 (West 1982).

There is a split of authority as to whether the exemption statute applies to independent contractors. Some courts have relied on the language of the statute and the congressional intent behind the federal act to deny protection other than to wage earners in an employee-employer relationship. *See, e.g., Olson v. Townsend,* 148 Vt. 135, 530 A.2d 566 (1987); *Coward v. Smith,* 6 Kan.App.2d 863, 636 P.2d 793 (1981). However, other courts, relying on identical statutory language and their interpretation of the congressional intent have extended protection to independent contractors. *See, e.g., First National Bank of Guthrie v. Brown,* 579 P.2d 825 (Okla.1978); *Marian Health Center v. Cooks,* 451 N.W.2d 846 (Iowa Ct.App.1989). This court finds the latter line of cases to be persuasive.

The intent of Congress in its enactment of Subchapter II of the Consumer Credit Protection Act is best stated by the Act itself. Section 1671 of title 15, entitled *Congressional findings and declaration of purpose,* provides in part:

(a) The Congress finds:

(1) The unrestricted garnishment of compensation due for personal services encourages the making of predatory extensions of credit. Such extensions of credit divert money into excessive credit payments and thereby hinder the production and flow of goods in interstate commerce.

(2) The application of garnishment as a creditors' remedy frequently results in loss of employment by the debtor, and the resulting disruption of employment, production, and consumption constitutes a substantial burden on interstate commerce.

(3) The great disparities among the laws of the several States relating to garnishment have, in effect, destroyed the uniformity of the bankruptcy laws and frustrated the purposes thereof in many areas of the country.

(b) On the basis of the findings stated in subsection (a) of this section, the Congress determines that the provisions of this subchapter are necessary and proper for the purpose of carrying into execution the powers of the Congress to regulate commerce and to establish uniform bankruptcy laws.

15 U.S.C.A. § 1671 (West 1982).

Clearly, the intent of Congress in its enactment of Subchapter II of the Consumer Credit Protection Act was to grant an exemption to wage earners from the burden of garnishments, to protect employment of wage earners, and to prevent bankruptcies. It was to grant relief for the wage earner debtors and "more particularly for his family," against economically destructive garnishments. *See Murray v. Zuke,* 408 F.2d 483, 487 (8th Cir.1969). These concerns apply equally to individuals working as independent contractors as well as to those engaged in traditional employee relationships. *Marian Health Center v. Cooks,* 451 N.W.2d at 848. Further, the language of the statute simply does not limit its effect to employees. "Earnings" include all compensation for personal services, including commissions. Tenn.Code Ann. § 26–2–105 (1980). Therefore, the exemption is available to independent contractors to the extent that the compensation sought to be garnished is for personal services. *See MDFC Equipment Leasing*

---

**2.** Subchapter II of the Act, entitled *Restrictions on Garnishments,* is enacted at 15 U.S.C.A. §§ 1671 to 1677 (West 1982). Section 1677 allows states to enact statutes that would prohibit garnishments altogether or place a greater limit on garnishments than required under the Act.

*Corp. v. Glickman (In re Glickman)*, 126 B.R. 124 (Bankr.M.D.Fla.1991) (construing Florida's nonuniform exemption statute).

The trustee argues that the debtor's renewal commissions are not compensation for personal services because he is no longer an agent of the insurance company. He will receive the commissions even though he will perform no additional services. The trustee's argument is unpersuasive.

Renewal commissions are in the nature of deferred compensation "for making the initial sale and as an incentive to encourage the insurance agents to service their customers, in order to encourage renewals." *First National Bank of Guthrie v. Brown*, 579 P.2d at 827. Although *Brown* is distinguishable from the instant case in that the debtor in the instant case is no longer an agent, the rationale still applies. The renewal commissions are still intended to compensate the debtor for making the initial sales. Merely because the commissions are payable only upon renewal of a policy does not render them something other than compensation for the debtor's personal service in making the initial sale. *See In re Marshburn*, 5 B.R. 711 (Bankr.D.Colo. 1980). Accordingly, the court finds that the debtor's renewal commissions are compensation for personal services. As such, they are subject to Tenn.Code Ann. § 26–2–106.

This Memorandum constitutes findings of fact and conclusions of law as required by Fed.R.Bankr.P. 7052. An appropriate order will be entered overruling the trustee's objection.