**In re Donald Eugene PRICE and Mary Mona Hahner Price, Debtors.**

**Bankruptcy No. 95–21662–7.**

United States Bankruptcy Court, D. Kansas.

May 14, 1996.

Eric C. Rajala, Overland Park, KS, for Debtors.

Carl R. Clark, Lentz & Clark, Overland Park, KS, Trustee/Attorney for Trustee.

## *MEMORANDUM OPINION AND ORDER*

JULIE A. ROBINSON, Bankruptcy Judge.

This matter comes before the Court pursuant to the Trustee's Objection to Amendment to Schedule C. A hearing was held on April 9, 1996, at which time the Court took the matter under advisement.

## *JURISDICTION*

The Court has jurisdiction over this proceeding. 28 U.S.C. § 1334. This is a core proceeding. 28 U.S.C. § 157(b)(2)(B).

---

## FINDINGS OF FACT

Donald Eugene Price and Mary Mona Hahner–Price filed a Chapter 7 petition in bankruptcy on August 22, 1995. On November 20, 1995, the debtors filed an Amendment to Schedule C—Property Claimed as Exempt. According to the Amendment, debtor Mary Mona Hahner–Price ("debtor") claims 75% of her interest in real estate commissions as exempt pursuant to K.S.A. 60–2310. The debtor claims interest in two real estate commissions in the amount of $2,672.13 and $644.43, and claims as exempt $2004.10 and $483.32, respectively.

Debtor testified that her contract and Kansas law required her, as a real estate licensee, to work exclusively under one broker. Debtor had been working with J.D. Reece since January of 1996, but from April of 1994 until the time of filing her bankruptcy petition, she was working with RE/MAX. The commissions she seeks to exempt derived from two prepetition real estate contracts which closed post-petition.

Debtor testified that she had no employees and that she performed all services herself. RE/MAX provided her with a computer and access to the MLS listing. She used her own car and hand held calculator. She had no capital investment in the business, just her labor and expenses. She had no mandatory time constraints, and could work as much or as little as she wanted. RE/MAX did not withhold taxes from debtor's commissions. Debtor was required to maintain her own insurance and was obligated to indemnify RE/MAX from any claims. She also testified that while some agents are required to pay a monthly administrative fee to RE/MAX, she was on a 70–30% split, with a 3% administrative fee, therefore entitling her to 67% of the commission, and entitling RE/MAX to 33%. This fee covered such things as rent, office overhead, furniture, utilities, telephone bills, secretarial and administrative expenses, janitorial services, and the like. Other personal expenses, such as long distance phone charges, copying charges or advertising, were either billed to her or deducted from her split. RE/MAX provided no training to agents, but someone at RE/MAX was responsible for hiring agents and firing them

for misconduct. Debtor was required to maintain a file for each case, and to provide RE/MAX with copies so it could keep an administrative file for five to seven years, in case of any potential lawsuits.

The agreement debtor entered into with RE/MAX is titled "Independent Contractor Agreement." It provides that debtor shall be deemed an independent contractor, and can devote as much time as she desires to her real estate sales efforts. It provides that debtor shall be treated as an independent contractor for state and federal tax purposes, and that debtor elects not to be covered by the workmen's compensation policy that RE/MAX subscribes to. It also provides that debtor shall not hire, employ, contract with or for, retain, hold the license of, or sponsor for license any real estate broker or salesperson.

RE/MAX agreed to make available to debtor on a non-exclusive basis, an office or desk space and a reception area, together with access to listings, forms, advertising, telephone and other communications means. Debtor agreed to act as a real estate agent subject to, among other things, the supervision/control of RE/MAX and/or the licensed broker(s) responsible for the RE/MAX office management. The agreement also contained the following provision:

> D. OTHER SERVICES. Contractor understands and is aware of the home protection services, which may be offered through RE/MAX for both [debtor] and [debtor's] clients and customers. [Debtor] will endeavor to use and promote the same, whenever possible. [Debtor] understands and is aware that insurance programs, loan programs and other services may be offered from time to time through RE/MAX for both [debtor] and [debtor's] clients, customers, and family. [Debtor] will endeavor to use and promote the same, whenever possible.

The agreement also authorized debtor to use the RE/MAX name and slogans on her business cards, letterhead, yard signs and other real estate business materials approved by RE/MAX. Debtor's privilege to use such marks was made expressly contingent on debtor's observance of and adherence to the

standards of property use and guidelines promulgated and from time to time amended by RE/MAX International, Inc.; debtor's adherence to and satisfaction of professional performance standards and service quality controls promulgated by RE/MAX, and debtor's continued affiliation with RE/MAX. The agreement also provided that it could be terminated without cause upon sixty days notice by either party, or immediately and without notice for "cause," in the event debtor defaults or otherwise fails to conduct her business in accordance with the terms of the agreement or engages in conduct which is disloyal or disrupts the office or is likely to bring discredit to the RE/MAX name. Debtor's contract with RE/MAX was renewed annually, and if debtor desired to change companies she had to give RE/MAX notice so that they could sign her license over to a new company.

### CONCLUSIONS OF LAW

The Trustee objects to the exemption, claiming that the debtor is an independent contractor and therefore not entitled to the limitation on garnishments contained in K.S.A. 60–2310. K.S.A. 60–2310 limits the garnishment of an individual's aggregate disposable earnings to twenty-five percent. K.S.A. 60–2310(b). The Kansas Court of Appeals has held that the protection offered by K.S.A. 60–2310 was intended for wage earners in an employer-employee relationship, and not for independent contractors, thus the amount due under a contract of an independent contractor is not earnings within the meaning of 60–2310(a)(1) and is not exempted from garnishment. *Coward v. Smith*, 6 Kan.App.2d 863, 866, 636 P.2d 793 (1981).

The court in *Coward* notes that K.S.A. 60–2310 is modeled after the Federal Consumer Credit Protection Act, 15 U.S.C. § 1671 *et seq.*, and the restrictions on garnishment were seen as a means to "relieve countless honest debtors driven by economic desperation from plunging into bankruptcy in order to preserve their employment and insure a continued means of support for themselves and their families." *Id.* at 865–66, 636 P.2d 793. In *In re Duncan*, 140 B.R. 210, 213 (Bankr.E.D.Tenn.1992), the court noted that

the language in most state wage garnishment exemption statutes is substantially similar to the federal Consumer Credit Protection Act. The court noted that there is a split of authority as to whether independent contractors are covered by the exemption statute. *Id.* Noting that Congress' intent in enacting the Consumer Credit Protection Act was to grant an exemption to wage earners from the burden of garnishments, to protect employment of wage earners, and to prevent bankruptcies, the court in *Duncan* held that these same concerns apply equally to individuals working as independent contractors. *Id.* (citations omitted). The court held that the exemption statute applies to independent contractors, to the extent that the compensation is for personal services. *Id.*

The court in *Coward* also focused on whether the compensation was for personal services. *Coward*, 6 Kan.App.2d at 866, 636 P.2d 793. Although the court held that the statute did not apply to independent contractors, its holding was based on the fact that their compensation includes more than compensation for personal services. *Id.* The court focused on the fact that an independent contractor generally employs others to perform the labor, and compensation includes compensation for personal services performed by the contractor's employees, reimbursement for equipment used, and a return on capital. *Id.* (citation omitted). Debtor performed all of her services personally. Debtor did not have a capital investment in the business, and debtor was prohibited from hiring, employing, contracting with or for, retaining, holding the license of, or sponsoring for license any real estate broker or salesperson.

The debtor argues that although she admits she is classified as an "independent contractor" for federal income taxation purposes, in all other respects her relationship with RE/MAX is that of an employer/employee. The Court must look to several factors to determine whether debtor should be classified as an employee or as an independent contractor for purposes of K.S.A. 60–2310. The Tenth Circuit Court of Appeals has noted the following twenty factors used by the state Department of Human Resources to

determine whether an employee-employer relationship exists:

1) the existence of the right of the employer to require compliance with instructions;
2) the extent of any training provided by the employer;
3) the degree of integration of the worker's services into the business of the employer;
4) the requirement that the services be provided personally by the workers;
5) the existence of hiring, supervision, and paying of assistants by the workers;
6) the existence of a continuing relationship between the worker and the employer;
7) the degree of establishment of set work hours;
8) the requirement of full-time work;
9) the degree of performance of work on the employer's premises;
10) the degree to which the employer sets the order and sequence of work;
11) the necessity of oral or written reports;
12) whether payment is by the hour, day or job;
13) the extent to which the employer pays business or travel expenses of the worker;
14) the degree to which the employer furnishes tools, equipment, and material;
15) the incurrence of significant investment by the worker;
16) the ability of the worker to incur a profit or loss;
17) whether the worker can work for more than one firm at a time;
18) whether the services of the worker are made available to the general public;
19) whether the employer has the right to discharge the worker; and
20) whether the employer has the right to terminate the worker.

*Herr v. Heiman,* 75 F.3d 1509, 1512 (10th Cir.1996) (citing *Crawford v. Dept. of Human Resources,* 17 Kan.App.2d 707, 845 P.2d 703, 706 (1989)). These factors are to be considered as a whole and particular emphasis should be placed on the employer's right to control the worker. *Id.*

■ The Court finds that, in considering the factors as a whole, debtor should be entitled to exempt her commissions pursuant to K.S.A. 60–2310. Particular emphasis should be put on the employer's right to control the worker, and it appears that RE/MAX did have the right to control debtor's actions. Debtor agreed to act subject to the supervision and control of RE/MAX and/or the licensed broker(s) responsible for the RE/MAX office management. Debtor's privilege to use the RE/MAX name was made expressly contingent on debtor's observance of and adherence to the standards of property use and guidelines promulgated by RE/MAX. Someone at RE/MAX was responsible for firing agents for misconduct. Debtor's agreement with RE/MAX could be terminated for cause if debtor defaulted or otherwise failed to conduct her business in accordance with the agreement or engaged in conduct that was disloyal or disruptive of the office or was likely to bring discredit to the RE/MAX name. In addition, debtor was required to work exclusively under one broker.

The above not only shows that RE/MAX exercised control over debtor, but it also suggests an employer/employee relationship in light of the following additional factors: the existence of the right of the employer to require compliance with instructions; the degree of integration of the worker's services into the business of the employer; the existence of hiring, supervision, and paying of assistants by the workers; the existence of a continuing relationship between the worker and the employer; whether the worker can work for more than one firm at a time; and whether the employer has the right to terminate the worker. Furthermore, one of the factors listed above focuses on the requirement that the services be provided personally by the workers, and the Court has already noted that debtor performed all of her services personally.

Although one of the factors focuses on whether payment is by the hour, day or job,

the fact that debtor is paid after each sale is not dispositive. In *Coward,* the court noted that there is no requirement that the debtor be paid for a regular pay period in order to be covered under K.S.A. 60–2310. *Coward,* 6 Kan.App.2d at 865, 636 P.2d 793 (citing *Harpster v. Reynolds,* 215 Kan. 327, 332, 524 P.2d 212 (1974), where truck driver who was paid upon completion of each trip was not deprived of the protection under the garnishment laws).

This case is clearly distinguishable from *In re Harris,* No. 85–11335, Adv. No. 85–0585 (Bankr.D.Kan. July 15, 1986). In *Harris,* the debtor and her husband jointly conducted a real estate and construction business as a partnership. *Id.* at p. 14. Because it was the debtor's business and there was no real estate company involved, the court looked at the relationship between the debtor and the seller of the real estate and determined that it was more of an owner/independent contractor relationship than an employer/employee relationship. *Id.* at 15. The court noted that the seller had no control over the actions of the broker/agent in listing, advertising or showing the realty, and the compensation was for more than personal services. *Id.* It included advertising, office overhead and a return on capital. *Id.* In the present case, the debtor works for RE/MAX, and does not own her own business. She is paid through RE/MAX, not directly from the seller. Therefore, the Court must focus on her relationship with RE/MAX. The Court has already noted that RE/MAX exercised control over debtor, and in addition, debtor was required to endeavor to use and promote RE/MAX's home protection services, insurance programs, loan programs and other services offered from time to time. The Court finds that, in considering the factors as a whole and the fact that debtor's compensation was for personal services, debtor should be considered an employee for purposes of exempting her commissions pursuant to K.S.A. 60–2310.

**IT IS THEREFORE ORDERED BY THE COURT** that the Trustee's Objection to Amendment to Schedule C shall be OVERRULED.

This Memorandum shall constitute findings of fact and conclusions of law under Rule 7052 of the Federal Rules of Bankruptcy Procedure and Rule 52(a) of the Federal Rules of Civil Procedure. A judgment based on this ruling will be entered on a separate document as required by Rule 9021 of the Federal Rules of Bankruptcy Procedure and Rule 58 of the Federal Rules of Civil Procedure.

IT IS SO ORDERED.