**In re Ricky D. JONES, Debtor.**

No. 04–32177.

United States Bankruptcy Court,
S.D. Ohio,
Western Division at Dayton.

Jan. 7, 2005.

Donald F. Harker, III, Dayton, OH, for debtor.

John Paul Rieser, Dayton, OH, trustee.

**DECISION OF THE COURT OVER-RULING TRUSTEE'S OBJECTION TO DEBTOR'S EXEMPTION IN EARNINGS**

LAWRENCE S. WALTER, Bankruptcy Judge.

This matter is before the court upon the Chapter 7 Trustee's amended objection to the Debtor's claimed exemption in his pre-petition earnings payable postpetition. The Debtor claims an exemption of $18,750, or 75% of $25,000, pursuant to 15 U.S.C. § 1673 as incorporated into Ohio Rev.Code § 2329.66(A)(17). Because this court concludes that Ohio's exemption scheme incorporates 15 U.S.C. § 1673 and that this exemption extends to the earnings of independent contractors, the Trustee's objection is overruled and the Debtor's claimed exemption is allowed.

## FACTUAL AND PROCEDURAL BACKGROUND

The issues to be decided arose from the Chapter 7 Trustee's objection to the claimed exemption in earnings by Debtor Ricky D. Jones ("Debtor"). The Debtor filed his bankruptcy petition on March 17, 2004 and in his schedules he indicated an interest in "Earnings (estimated)" amounting to $25,000.[1] [Doc. 1, *Schedule B.*] The "earnings" owed to the Debtor were from his occupation as a "self-employed contractor" working for the Veterans Administration. *Id., Schedule I.* Of the total amount owed to the Debtor as of the date he filed his petition, the Debtor claimed an exemption in 75% of the earnings, amounting to $18,750, under 15 U.S.C. § 1673, part of the Federal Consumer Credit Protection Act. *Id., Schedule C.*

On August 11, 2004, following an extension of time, Chapter 7 Trustee John Rieser ("Trustee") filed an objection to the Debtor's claimed exemption. [Doc. 24.] The Trustee asserted that in the decision of *Kokoszka v. Belford,* 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974), the Supreme Court specifically held that the fed-

---

1. The Debtor originally indicated that his earnings due at the time of the petition filing date amounted to $25,000. [Doc. 1, *Schedule B.*] The Debtor then amended his Schedule B to reduce the earnings due as of the filing date to $21,200. [Doc. 12.] Following the first amendment, he amended his Schedule B a second time to raise the amount of earnings due on the date of filing back to the original amount of $25,000. [Doc. 31.] Consequently, the Debtor currently claims an interest in $25,000 of prepetition earnings due at the time of the bankruptcy filing.

eral statute under which the Debtor claimed his exemption, 15 U.S.C. § 1673, did not create an exemption for bankruptcy purposes. Even if it had created a federal exemption, the Trustee argued that Ohio had opted out of the federal exemption scheme pursuant to 11 U.S.C. § 522(d) and, consequently, the Debtor had to claim any exemption in the earnings under Ohio's exemption statute, Ohio Rev. Code § 2329.66. The Trustee noted that no exemption was claimed by the Debtor under this Ohio exemption statute. Furthermore, the Trustee argued that the Ohio exemption statute contains an exemption for some forms of "personal earnings," specifically Ohio Rev.Code § 2329.66(A)(13), but that "personal earnings" has been defined under other Ohio statutes to exclude earnings of an independent contractor like the Debtor.

No party disputes that the Debtor is, in fact, an independent contractor. The Debtor describes himself as a self-employed contractor who conducts counseling services for the Veterans Administration. [Doc. 1, *Schedule 1*; Doc. 33.] The Debtor is not an employee of the VA nor does the Debtor employ employees. [Doc. 33.] The Debtor counsels veterans and submits bills for his services rendered to the VA typically on a monthly basis. *Id.* The VA then remits to the Debtor his earnings from which the VA makes no deductions. *Id.*

Based on this characterization of the Debtor's occupation, the Trustee asserts that the Debtor is not entitled to an exemption in bankruptcy for any of his earnings due at the time of the petition filing.

Following the Trustee's objection, the Debtor amended his Schedule C to change the statute under which he claimed an exemption in these earnings. [Doc. 32.] He amended the schedule to claim an exemption under the Ohio exemption statute, Ohio Rev.Code § 2329.66(A)(17) which arguably incorporates 15 U.S.C. § 1673.[2]

After filing his amendment, the Debtor responded to the Trustee's objection. [Doc. 33.] The Debtor noted that in his amendment, his basis for the exemption in earnings was now grounded in Ohio law and its incorporation of a federal statute. Specifically, the Debtor argues that Ohio Rev.Code § 2329.66(A)(17) provides an exemption for any property that is specifically exempted from execution, attachment, garnishment or sale by any federal statutes other than those within Title 11, the Bankruptcy Code. Because 15 U.S.C. § 1673 is a federal non-bankruptcy statute that exempts earnings from garnishment, the Debtor argues that it is incorporated into Ohio Rev.Code § 2329.66(A)(17) and provides the Debtor an exemption in his earnings due at the petition filing date.

**2.** While it appears from the amendment to Schedule C that the Debtor substituted one statutory exemption for another, the parties' subsequent pleadings and memoranda continue to address both Ohio Rev.Code § 2329.66(A)(17) and 11 U.S.C. § 522(b)(2)(A), each of which may arguably incorporate 15 U.S.C. § 1673. As discussed *infra,* dicta in the United States Supreme Court decision *Kokoszka v. Belford,* 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974) strongly suggests that Congress did not intend for 15 U.S.C. § 1673 to be a bankruptcy exemption incorporated into the Bankruptcy Act by § 6, 11 U.S.C. § 24, a section roughly

equivalent to Bankruptcy Code § 522(b)(2)(A). Consequently, although some courts have questioned an interpretation of *Kokoszka* that prevents use of 15 U.S.C. § 1673 as an exemption under the Bankruptcy Code, the Debtor apparently recognized the impediment imposed by *Kokoszka* and chose to amend Schedule C and place his reliance upon the Ohio exemption scheme. Because the court regards the amended Schedule C as a substitution for the originally filed Schedule C and because this matter can be fully determined with reference to Ohio Rev.Code § 2329.66(A)(17), a full analysis of *Kokoszka* and § 522(b)(2)(A) is unnecessary.

The Trustee proceeded to file an amended objection to the Debtor's claimed exemption. [Doc. 40.] The Trustee asserts that Ohio Rev.Code § 2329.66(A)(17) does not create an exemption for the Debtor's earnings as an independent contractor. The Trustee argues that the Ohio legislature intended to exclude such earnings when they were not specifically included in the exemption for earnings under Ohio Rev.Code § 2329.66(A)(13). Furthermore, the Trustee concludes that Congress did not intend for 15 U.S.C. § 1673 to create an exemption in bankruptcy and this intention is discussed in the Supreme Court decision in *Kokoszka v. Belford.*

In response to the Trustee's amended objection, the Debtor filed a second response incorporating the analysis in his earlier response to the Trustee's initial objection. [Doc. 41.] Following the filing of the briefs and responses, the parties agreed that no hearing on the Trustee's objection to the Debtor's exemption was necessary and that the matter could be decided on the documents filed with the court.

## LEGAL ANALYSIS

The Debtor requests an exemption for prepetition earnings due to him as an independent contractor conducting counseling services for the Veterans Administration. The exemption is requested under 15 U.S.C. § 1673 as incorporated into the Ohio exemption statute, Ohio Rev.Code § 2329.66(A)(17). The Trustee objects arguing that while the state exemption statute contains a specific exemption for certain prepetition earnings[3], it does not exempt earnings of an independent contractor such as the Debtor. Further, the Trustee argues that a more general provision of the Ohio exemption statute that provides an exemption for property that would be exempt from garnishment under other state or federal laws, such as 15 U.S.C. § 1673, is inapplicable. Because the Supreme Court has concluded that Congress did not intend 15 U.S.C. § 1673 as an exemption in bankruptcy, the Trus-

---

**3.** The Trustee recognizes that certain prepetition "personal earnings" are exempt and protected by the Ohio exemption statute within Ohio Rev.Code § 2329.66(A)(13). However, the Trustee argues that earnings owed to an independent contractor are not exempt under this provision because they do not fit within the definition of "personal earnings" under Ohio law. The Trustee relies on Ohio Rev. Code § 2716.01 and its definition of personal earnings, as well as an Ohio appellate court decision, to support that earnings of an independent contractor are not "personal earnings" because such workers do not have an employer required to withhold taxes on their behalf. *See Leybovich v. Grover,* No. CA98–04–041, 1998 WL 761681 (Ohio Ct.App. Nov. 2, 1998). This court notes that the unreported *Leybovich* decision is of limited value and the appellate court's conclusion was largely dicta in that case. *Id.,* at * 1 (basing its ultimate holding on the fact that a prisoner making a token wage for involuntary labor is not receiving the type of pay for voluntary work under a contract for hire that would constitute personal earnings protected from garnishment). Furthermore, conflicting case law suggests that "personal earnings" should be construed broadly under Ohio law and may include a person's earnings even when there is no employer required to withhold taxes from those earnings. *See Smythe Cramer Co. v. Guinta,* 116 Ohio Misc.2d 20, 762 N.E.2d 1083 (Medina Mun. Ct.2001) (determining that real estate commissions are "personal earnings" under Ohio law even though the real estate salesperson did not have an employer withholding taxes on the earnings); *Riley v. Kessler,* 2 Ohio Misc.2d 4, 441 N.E.2d 638 (Ohio Ct.Com.Pl.1982) (noting that "personal earnings" and the protection provided to them under Ohio law should be construed expansively to encompass protection of such earnings as vacation pay). Ultimately, the court need not resolve the conflict regarding the definition of personal earnings under Ohio Rev.Code § 2329.66(A)(13) because the Debtor did not request an exemption under this provision of the Ohio exemption statute.

tee argues that it is not an exemption available to the Debtor through incorporation into the Ohio exemption statute.

### A. Incorporation of 15 U.S.C. § 1673 into the Ohio Exemption Scheme

■ The court begins its analysis with the Bankruptcy Code and its governance of a debtor's property in bankruptcy. The filing of a bankruptcy petition under Chapter 7 of the Bankruptcy Code creates an estate consisting of, with a few exceptions, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541. The property of the estate comes under the control of the Trustee and is generally used to pay a debtor's prepetition creditors. However, as a matter of public policy, Congress determined that an honest debtor may exempt or keep some property from the claims of creditors so that the debtor can start anew after obtaining bankruptcy relief. *In re Robinson*, 292 B.R. 599, 606 (Bankr.S.D.Ohio 2003) (noting that the purpose of exemptions is to provide a debtor with a "grub-stake" to begin a fresh start and to act as a safety net so that the debtor and his family are not completely impoverished and forced to become wards of the state due to collection activities or bankruptcy); *In re Mitchell*, Case No. 02–13713, 2002 WL 31443051, at *1 (Bankr. N.D.Ohio Oct. 31, 2002).

■ Accordingly, Congress enacted provisions of the Bankruptcy Code to provide a debtor with exemptions in bankruptcy. Pursuant to the Bankruptcy Reform Act of 1978, Congress enacted § 522, and specifically, § 522(b), that offers debtors a choice between exempting the property listed in § 522(d) or property protected by federal nonbankruptcy or state law. 11 U.S.C. § 522(b)(1) and (2). However, Congress gave states the choice to "opt out" of allowing debtors domiciled within the state to use the list of federal exemptions provided in § 522(d). 11 U.S.C. § 522(b)(1). Ohio is one of the states that chose to opt out of the federal exemption scheme. Ohio Rev.Code § 2329.662 (stating that "... this state specifically does not authorize debtors who are domiciled in this state to exempt the property specified in the 'Bankruptcy Reform Act of 1978'"); *Storer v. French (In re Storer)*, 58 F.3d 1125, 1127 (6th Cir.1995) (noting that as an "opt-out" state, Ohio has replaced the federal exemptions in § 522(d), with its own state exemptions available to debtors under Ohio's general debtor-creditor law). Because Ohio has opted out, Ohio debtors must choose their exempt property by reference to federal non-bankruptcy law or state law rather than the federal exemption scheme in the Bankruptcy Code. Regardless of whether the exemptions fall under the federal or a state exemption scheme, bankruptcy exemptions are to be liberally construed in favor of debtors. *In re Peacock*, 292 B.R. 593, 595 (Bankr. S.D.Ohio 2002); *In re Lynch*, 187 B.R. 536, 550 (Bankr.E.D.Ky.1995).

In this case, the Debtor has requested an exemption in his prepetition earnings due at the time of filing pursuant to Ohio Rev.Code § 2329.66. This statute provides a list of property exempt from execution, garnishment, attachment or sale by persons domiciled within the state. The section of this statute cited as the basis for the Debtor's exemption in earnings states:

(A) Every person who is domiciled in this state may hold property exempt from execution, garnishment, attachment, or sale to satisfy a judgment or order, as follows:

...

(17) Any other property that is specifically exempted from execution, attachment, garnishment, or sale by federal statutes other than the "Bank-

ruptcy Reform Act of 1978," 92 Stat. 2549, 11 U.S.C.A. 101, as amended[.] Ohio Rev.Code § 2329.66(A)(17). The Debtor asserts that he may exempt his earnings under this provision of the Ohio exemption statute via its incorporation of federal non-bankruptcy laws that protect property from execution, garnishment or sale. The Debtor argues that the provision incorporates a non-bankruptcy federal law, 15 U.S.C. § 1673, that exempts earnings from garnishment.

The federal garnishment statute referred to by the Debtor is part of the Federal Consumer Credit Protection Act, 15 U.S.C. § 1601, *et seq.*, (hereinafter referred to as the "CCPA"). The provision relied on by the Debtor places a restriction on garnishment of an individual's "disposable earnings." The statute states, in pertinent part:

(a) Maximum allowable garnishment

Except as provided in subsection (b) of this section and in section 1675 of this title, the maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment may not exceed

(1) 25 per centum of his disposable earnings for that week, or

(2) the amount by which his disposable earnings for that week exceed thirty times the Federal minimum hourly wage prescribed by section 206(a)(1) of Title 29 in effect at the time the earnings are payable,

whichever is less. In the case of earnings for any pay period other than a week, the Secretary of Labor shall by regulation prescribe a multiple of the Federal minimum hourly wage equivalent in effect to that set forth in paragraph (2).

15 U.S.C. § 1673.

The court agrees with the Debtor that this federal non-bankruptcy statute re-

stricting garnishment of earnings appears to fall within the literal language of Ohio Rev.Code § 2329.66(A)(17). However, the Trustee argues that § 1673 was not intended to be incorporated as a bankruptcy exemption in this manner relying on the United States Supreme Court decision in *Kokoszka v. Belford,* 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974).

In *Kokoszka,* the Supreme Court addressed a debtor's attempt to exempt a tax refund from garnishment pursuant to the CCPA. The Supreme Court concluded that tax refunds do not constitute "earnings" as defined under the CCPA, and, consequently, they are not entitled to the protections afforded to earnings under the CCPA. *Kokoszka,* 417 U.S. at 651, 94 S.Ct. 2431. The Supreme Court further concluded that because Congress intended the CCPA's protection of earnings from garnishment to help prevent consumers from entering bankruptcy in the first place, the Act was never intended to "alter the delicate balance of a debtor's protections and obligations during the bankruptcy procedure." *Id.* Although this language was dicta and unnecessary to the ultimate holding of the court, courts have used it to conclude that Congress did not intend § 1673 of the CCPA to provide a federal exemption in bankruptcy under 11 U.S.C. § 522(b). *See Riendeau v. Canney (In re Riendeau),* 293 B.R. 832, 838 (D.Vt.2002), *aff'd on other grounds* 336 F.3d 78 (2nd Cir.2003); *In re Brissette,* 561 F.2d 779, 784–85 (9th Cir. 1977). *But see In re Sanders,* 69 B.R. 569, 571 (Bankr.E.D.Mo.1987) (suggesting that courts are in error to rely on *Kokoszka's* dicta to prevent debtors from exempting property under the CCPA).

█ While some courts have used the *Kokoszka* decision to support the view that Congress did not intend § 1673 as a feder-

al bankruptcy exemption, Ohio specifically rejected Congress's list of federal bankruptcy exemptions when the state opted out of the federal exemption scheme. As an opt out state, Ohio has the ability to enact its own exemptions even if they conflict with those established by Congress in the Bankruptcy Code. *Storer,* 58 F.3d at 1128–29. Consequently, the dicta in the *Kokoszka* decision has no bearing on whether Ohio intended to include § 1673 of the CCPA within its state exemption list nor does it prevent the garnishment protection within the CCPA from being adopted as a bankruptcy exemption in an opt-out state. *See Forker v. Irish (In re Irish),* 311 B.R. 63, 66–7 (8th Cir. BAP 2004) (noting that an opt-out state could adopt the CCPA as a state exemption based on garnishment protection statutes regardless of the Congressional purpose for the CCPA and Supreme Court's decision in *Kokoszka*); *In re Robinson,* 241 B.R. 447, 451 (9th Cir. BAP 1999) (holding that Oregon has plenary authority over its own law of exemptions and, consequently, the Supreme Court's conclusions regarding Congressional intent with the CCPA has no bearing on the Oregon legislature's intent when enacting its state garnishment statute); *In re Urban,* 262 B.R. 865, 869–70 (Bankr.D.Kan.2001) (holding that "[w]hether or not Congress intended to create such an exemption [in bankruptcy] sheds no light on whether the Kansas legislature sought to create an exemption when it borrowed . . . § 1673(a)'s language . . . .").

As noted previously, the broad language of Ohio Rev.Code § 2329.66(A)(17) incorporates federal non-bankruptcy laws that protect property from execution, attachment, garnishment or sale. The garnishment protection provided by 15 U.S.C. § 1673 of the CCPA falls squarely within this incorporating provision. Indeed, other courts have recognized the Ohio legislature's intent, with Ohio Rev.Code § 2329.66(A)(17), to incorporate federal statutes that provide protection to earnings and other benefits from execution or garnishment. *See Donovan v. Hamilton County Mun. Ct.,* 580 F.Supp. 554, 555–56 (S.D.Ohio 1984) (recognizing the incorporation of provisions of the CCPA via former Ohio Rev.Code § 2329.66(A)(16) which is now Ohio Rev.Code § 2329.66(A)(17)); *Hunter v. U.S. (In re Szabo),* 60 B.R. 144, 146–47 (Bankr.N.D.Ohio 1986) (recognizing that the protection from execution provided to veterans' benefits under a federal non-bankruptcy statute was incorporated into state law and made into an Ohio bankruptcy exemption pursuant to former Ohio Rev.Code § 2329.66(A)(16) which is now Ohio Rev.Code § 2329.66(A)(17)).

From this analysis, the court concludes that Ohio Rev.Code § 2329.66(A)(17) incorporates the garnishment protections afforded by the CCPA. However, this conclusion does not end the inquiry. The Trustee raises an alternative argument asserting that even if the CCPA is incorporated as an exemption under Ohio law, its language does not afford garnishment protection to the earnings of independent contractors.[4]

---

**4.** The Trustee raises this alternative argument summarily in a footnote within his legal memorandum requesting that the court allow the Trustee to brief the issue separately if the court should conclude that the CCPA is incorporated into Ohio law. [Doc. 40, p. 5 n. 1.] The court notes that the Trustee carries the burden of proving the invalidity of the Debt-

or's claimed exemption and fully raising all alternative arguments necessary to carry that burden. The court therefore refuses to give the Trustee a "second bite of the apple," to brief additional matters he easily could have addressed in his initial objection. However, because the court believes that the Trustee has touched on an important legal issue in his

## B. Application of 15 U.S.C. § 1673 to the Earnings of Independent Contractors

■ The Trustee correctly notes that there exists a split in authority regarding the CCPA's interpretation and how it impacts the earnings of independent contractors. As noted previously, 15 U.S.C. § 1673 of the CCPA protects a percentage of "disposable earnings" from garnishment. The important terms of § 1673 are defined within 15 U.S.C. § 1672 which states, in pertinent part:

For the purposes of this subchapter:

(a) The term "earnings" means compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program.

(b) The term "disposable earnings" means that part of the earnings of any individual remaining after the deduc-

tion from those earnings of any amounts required by law to be withheld.

(c) The term "garnishment" means any legal or equitable procedure through which the earnings of any individual are required to be withheld for payment of any debt.

15 U.S.C. § 1672. Neither the provisions of § 1673 nor the definitions provided in § 1672 specifically express whether the garnishment protection applies to the earnings of independent contractors. Moreover, courts interpreting the identical statutory language and Congressional intent behind the CCPA come to diametrically opposed conclusions regarding whether the garnishment protection extends to independent contractors. *See In re Duncan,* 140 B.R. 210, 213 (Bankr. E.D.Tenn.1992) (determining that the relief from destructive garnishments afforded to wage earners through the CCPA is equally applicable to independent contractors)[5]; *In re Price,* 195 B.R. 775, 777

---

footnote, the court will address the matter even though it was not fully briefed by the Trustee.

**5.** Subsequent to the *Duncan* decision, the District Court for the Eastern District of Tennessee determined that the Tennessee garnishment statute analyzed in *Duncan,* cannot be used as an exemption in bankruptcy. *Lawrence v. Jahn (In re Lawrence),* 219 B.R. 786 (E.D.Tenn.1998). The District Court based its decision on the fact that the Tennessee garnishment statute only protects earnings from garnishment and does not include language exempting earnings from other forms of judicial processes to collect debts such as execution, seizure or attachment. *Id.* at 792. Because the statute does not contain broad language exempting the earnings permanently from the reach of creditors through these other judicial processes, the court concluded that the statute was not intended to provide an exemption in bankruptcy. *Id.* at 792–93. The language of the Tennessee garnishment statute differs greatly from that of the Ohio exemption statute. The Ohio ex-

emption statute contains language protecting the property described therein from "execution, garnishment, attachment, or sale to satisfy a judgment or order." Ohio Rev.Code § 2329.66(A). Therefore, the broad language contained in the Ohio exemption statute indicates the intent of the Ohio legislature to use this statute to create exemptions in bankruptcy. *Id.; Lawrence,* 219 B.R. at 799 (noting that the broader language of the Ohio exemption statute, Ohio Rev.Code § 2329.66, indicated that earnings protected via this statute were to "remain exempt" in bankruptcy). Consequently, the *Lawrence* case is distinguished by the differing language of the Tennessee statute at issue in that case. Furthermore, the *Lawrence* court did not reach the issue of whether independent contractors' earnings are protected from garnishment under either the Tennessee garnishment statute or the CCPA. For this reason, the *Duncan* decision remains viable for the limited purpose of determining whether or not the protection afforded earnings by the CCPA applies to independent contractors.

1849

(Bankr.D.Kan.1996) (suggesting that the CCPA's garnishment protection extends to independent contractors earnings to the extent they were for personal services); *In re Sexton,* 140 B.R. 742, 744 (Bankr. S.D.Iowa 1992) (concluding that an Iowa garnishment statute, modeled after the CCPA, provided the earnings of an independent contractor with protection from garnishment and an exemption in bankruptcy); *Marian Health Center v. Cooks,* 451 N.W.2d 846, 848 (Iowa Ct.App.1989) (holding that the wage protection provisions of the CCPA were not dependent on the wage earner's status as an employee or an independent contractor). *Contra Yaden v. Osworth (In re Osworth),* 234 B.R. 497, 499–500 (9th Cir. BAP 1999) (basing its decision on the determination in *Usery v. First Nat. Bank of Arizona,* 586 F.2d 107 (9th Cir.1978) that the CCPA was to preserve the stability of the employer-employee relationship and, consequently, was inapplicable to independent contractors); *In re Galvez,* 115 Nev. 417, 990 P.2d 187, 189–90 (1999) (relying on the *Kokoszka* decision to determine that the CCPA applies only to earnings that are periodic in nature and not the earnings of independent contractors); *Olson v. Townsend,* 148 Vt. 135, 530 A.2d 566, 567–69 (1987) (determining that the Vermont garnishment protection provisions, identical to the CCPA, did not apply to a self-employed surveyor even to the extent that his "receivables" were for personal services).

Following its own review of the statutory language, congressional intent, and relevant case law, the court concludes that the protections afforded by the CCPA apply to independent contractors to the extent the payments are made for the contractor's personal services. The court begins with the language of the relevant statutes.[6] In the definitions section, the CCPA provides a broad definition of "earnings" encompassing "compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise ...." 15 U.S.C. § 1672. The various forms of payment for personal services described and the use of the language "or otherwise" indicates a broad protection of earnings for personal services in whatever form they are paid. *Id.; In re Pruss,* 235 B.R. 430, 433–34 (8th Cir. BAP 1999), *vacated following dismissal of bankruptcy case,* 229 F.3d 1197 (8th Cir.2000), 255 B.R. 314 (8th Cir. BAP 2000).

Although the *Pruss* opinion of the Eight Circuit Bankruptcy Appellate Panel was vacated following the dismissal of the underlying bankruptcy case leaving it with no effect as law, the reasoning of this court is compelling. In *Pruss,* the Eighth Circuit Bankruptcy Appellate Panel was faced with the issue of whether an attorney who had filed for bankruptcy protection could claim an exemption in accounts receivable under the garnishment protection laws of Nebraska that were modeled after the CCPA. 235 B.R. at 432–33. The court reviewed the garnishment statute's definition of earnings, which was identical to the definition of earnings in the CCPA. The court concluded that the definition was broad enough to encompass and protect an attorney's accounts receivable to the extent they were payment for personal services. *Id.* at 433. The court noted that

---

**6.** The court recognizes the rules of construction and the "binding requirement that this court must apply the plain meaning of the statutory language, unless it is the rare instance in which a 'literal application of the statute will produce a result demonstrably at odds with the intentions of its drafters.' " *Roberds, Inc. v. Broyhill Furniture (In re Roberds, Inc.),* 315 B.R. 443, 468 (Bankr.S.D.Ohio 2004) (quoting from *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989)).

although the accounts receivable were not salary or wages in the traditional sense, they were "earnings" to the extent they were fees generated by the attorney for the performance of legal services. *Id.*

Furthermore, the *Pruss* majority rejected the minority's reliance on the definition of "disposable earnings" to exclude independent contractors. First, the majority concluded that the term "disposable earnings" was used in the garnishment statute only to determine that part of a person's compensation that was subject to garnishment and not what categories of compensation are protected in the first place. *Id.* at 434. Second, that part of the definition of "disposable earnings" limiting it to earnings leftover after deducting those amounts "required by law" did not serve to exclude independent contractors or self-employed individuals. *Id.* at 435. Although such workers lack an employer who is required to withhold amounts from the workers' earnings, the "absence of withholding does not preclude a self-employed individual from the benefits of the garnishment exemption statute." *Id.* To hold otherwise would create the "absurd result that, in the case of an attorney, the exemption would be available to a sole practitioner who works through his or her own professional corporation but would not be available to the sole practitioner who avoids the mechanics of incorporation." *Id.*

An Ohio appellate court opinion also acknowledges the broad scope of protection afforded "earnings" within the CCPA. In *BancOhio National Bank v. Box*, the court concluded that the CCPA protected commissions noting that in interpreting the CCPA, courts should

... ignore any 'label' given to the money due, i.e. wages, salary, commission, etc. The sole criteria for the exemption is that the funds ('earnings') subject to the

garnishment, in fact and in a strict sense, represent 'compensation' for 'personal services.'

63 Ohio App.3d 704, 707, 580 N.E.2d 23, 25 (Ohio Ct.App.1989) (further citations omitted).

■ This court agrees with the majority in the *Pruss* opinion and the Ohio appellate court's determination in *BancOhio* in their conclusions that the broad definition of earnings provided in 15 U.S.C. § 1672 encompasses compensation for personal services in whatever form it takes. Thus, the language of the CCPA supports its application to independent contractors.

■ The court also considers the intent of Congress in its enactment of the CCPA. As noted in *Duncan*, Congressional intent with regard to the CCPA is "best stated by the Act itself" and is incorporated into 15 U.S.C. § 1671, a statute entitled *Congressional findings and declaration of purpose. Duncan*, 140 B.R. at 213. The statute provides:

(a) Disadvantages of garnishment

The Congress finds:

(1) The unrestricted garnishment of compensation due for personal services encourages the making of predatory extensions of credit. Such extensions of credit divert money into excessive credit payments and thereby hinder the production and flow of goods in interstate commerce.

(2) The application of garnishment as a creditors' remedy frequently results in loss of employment by the debtor, and the resulting disruption of employment, production, and consumption constitutes a substantial burden on interstate commerce.

(3) The great disparities among the laws of the several States relating to garnishment have, in effect, destroyed the uniformity of the bankruptcy laws

and frustrated the purposes thereof in many areas of the country.

(b) Necessity for regulation

On the basis of the findings stated in subsection (a) of this section, the Congress determines that the provisions of this subchapter are necessary and proper for the purpose of carrying into execution the powers of the Congress to regulate commerce and to establish uniform bankruptcy laws.

15 U.S.C. § 1671. The purpose of the Act, clearly delineated in this statute, of preventing destructive garnishments and bankruptcy is equally applicable to independent contractors as employees since "[g]arnishing an independent contractor's income to exhaustion will result in bankruptcy as surely as it will with an employee." *Marian Health Center*, 451 N.W.2d at 848. *See also Pruss*, 235 B.R. at 436 (concluding that the policy reasons for adopting the CCPA's garnishment limitations apply with equal force to individuals earning their living as independent contractors as they do to employees in traditional wage earning positions); *Duncan*, 140 B.R. at 213 (noting that the concerns of protecting wage earners and their families from economically destructive garnishments applies to individuals working as independent contractors).

Based on the broad definition of earnings provided in the CCPA as well as the Congressional purpose for the CCPA, the court concludes that the CCPA's garnishment protection applies to individuals working as independent contractors as well as employees as long as the earnings are compensation for personal services.

### CONCLUSION

The court holds that Ohio Rev.Code § 2329.66(A)(17) incorporates the garnishment protection of "earnings" provided by the Federal Consumer Credit Protection Act in 15 U.S.C. § 1673. Furthermore, the "earnings" of independent contractors receive the protections provided under the Act to the extent the earnings are compensation for personal services. For these reasons, the court overrules the Trustee's objection to the Debtor's claimed exemption in his earnings due at the time of the bankruptcy filing.[7]

**SO ORDERED.**

---

7. The Debtor and Trustee both concluded that the court could rely on the characterization of the facts as written in the parties' memoranda filed with the court. In the Debtor's Response, the Debtor asserted that the amounts owed to him were for his "services rendered" as a counselor to veterans. [Doc. 33.] The court believes this characterization of the amounts owed to the Debtor would constitute "compensation" for "personal services" covered by the CCPA. However, the court recognizes that neither party may have fully determined the nature of what is owed to the Debtor by the Veterans Administration. Consequently, to the extent that the Trustee determines that some portion of the funds owed to the Debtor do not constitute compensation for personal services, the court will allow the Trustee to file a renewed objection.